**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Family Mutual Insurance Co., a Wisconsin corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>National Fire & Marine Insurance Co., a foreign corporation; et al,<br><br>        Defendants. | No. CV07-2237-PHX-NVW<br><br>**ORDER**<br><br>[Not for Publication] |

Pending before the Court is Defendant American Safety Indemnity Company's Motion for Summary Judgment (Phase One) (doc. #467).

A party moving for summary judgment must "file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Any party opposing a motion for summary judgment must file a separate statement responding to each paragraph of the moving party's separate statement of facts and setting forth any additional facts that establish a genuine issue of material or otherwise preclude judgment in favor of the moving party. LRCiv 56.1(b). LRCiv 56.1(d) permits the moving party to file a "reply memorandum," but does not permit the moving party to file a separate statement responding to the nonmoving party's separate statement. Any evidentiary objections to the nonmoving party's separate statement may be included in the reply memorandum, but may not be

1 made in a separate statement. Therefore, the Court disregards and does not rely upon Defendant American Safety Indemnity Company's Response to Plaintiff's Separate Statement of Facts (doc. #552).

**I.      Legal Standard for Summary Judgment**

The Court should grant summary judgment if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce evidence and persuade the Court there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law. *Id.* at 248. A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nature of this responsibility varies, however, depending on whether the moving party or the nonmoving party would bear the burden of proof at trial on the issues relevant to the summary judgment motion. If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

1 | When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*

In the context of summary judgment, the court presumes the nonmoving party's evidence is true and draws all inferences from the evidence in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). If the nonmoving party produces direct evidence of a genuine issue of fact, the court does not weigh such evidence against the moving party's conflicting evidence, but rather submits the issue to the trier of fact for resolution. *Id.*

However, each numbered paragraph of the moving party's separate statement of facts shall be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts. LRCiv 56.1(b).

## II. Facts Undisputed or Presumed True for Summary Judgment

Astragal, L.L.C. ("Astragal") was the developer of the project commonly known as Astragal Luxury Villas at Thompson Peak located in Maricopa County, Arizona ("Villas"). Astragal entered into a contract with George F. Tibsherany Development Company ("GFTDC") to serve as the general contractor for the Villas. GFTDC entered into a subcontract agreement with Structures, Inc. ("Structures"), among others, to perform work at the Villas. The subcontract required Structures to maintain specifically described insurance coverage and to cause all its insurance companies to name GFTDC as an additional insured on all insurance policies required under the subcontract. A Certificate of Liability Insurance dated June 18, 2003, was issued to GFTDC showing Structures was insured by "American Safety Indemnity c/o CRC, Chicago" and "American States/Safeco, CA office."

American Safety Indemnity Company ("American Safety") is a surplus lines insurance carrier, a non-admitted insurance company, which placed the Policies with Structures through CRC of Illinois, Inc. ("CRC"), a designated surplus lines broker authorized to place insurance in the State of Arizona. The Producer Agreement between American Safety and CRC grants CRC limited authority to issue Certificates of Insurance in CRC's capacity as the representative of CRC's accounts and clients and not as an agent or authorized representative of the applicable insurance carriers or American Safety. It states that CRC "shall have no authority to extend the time for payment of premiums, to waive or extend any policy obligation or condition, or to incur any liability on [American Safety's] behalf, unless such authority is expressly granted to [CRC] by [American Safety] in writing." It also provides: "[CRC] shall immediately notify [American Safety] of any claim of which [CRC] become[s] aware on any policy of insurance, bond or otherwise, and shall provide [American Safety] with all relevant information of which [CRC is] aware or subsequently obtain[s] and will provide [CRC's] full cooperation to [American Safety] and any insurance carrier in connection therewith." The Producer Agreement does not state that CRC has authority to accept tenders of defense or demands for indemnity on American Safety's behalf.

American Safety issued three commercial general liability policies to Structures: policy number XGI 02-3188-001, effective June 17, 2002, to June 17, 2003; policy number XGI 03-3188-002, effective June 17, 2003, to June 17, 2004; and policy number ESL 001303-04-03, effective June 17, 2004, to June 17, 2005 (collectively "Policies"). The Policies include the following provisions:

**2.   Duties In The Event of Occurrence, Offense, Claim Or Suit**

    **a.**   You[1] must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
        **(1)**   How, when and where the "occurrence" or offense took place;

---

[1] "You" in the Policies refers to Structures.

- 4 -

    **(2)** The names and addresses of any injured persons and witnesses; and
    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:
    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
    **(2)** Notify us as soon as practicable.

  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:
    **(1)** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";
    **(2)** Authorize us to obtain records and other information;
    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which the insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

* * *

### ENDORSEMENT – SERVICE OF SUIT CLAUSE

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

It is agreed that the service of process in any "claim" or "suit" on the policy against American Safety Indemnity Company may be made upon the highest one in authority bearing the title "Commissioner," "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued. The one in authority bearing the title "Commissioner," "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued is hereby authorized and directed to accept service of process on our behalf in any such "claim" or "suit," provided such "Commissioner," "Director" or "Superintendent" has a procedure for forwarding "claims" and "suits" to insurance companies by registered or certified mail and agrees to abide by such procedure by mailing via registered or certified mail all documents so served to American Safety Indemnity Company at 1845 The Exchange, Suite 200, Atlanta, Georgia 30339. It is further agreed that the insured shall, by registered or certified mail, send to American Safety Indemnity Company, a copy of all documents relating to the service of process in the "claim," or "suit" as the insured has delivered to the highest one in authority of the Insurance Department of the state or commonwealth wherein the policy is issued.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

* * *

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS (MODIFIED FORM B)**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

**Name of Person or Organization:** Those parties required to be named as an Additional Insured in a written contract with the Named Insured entered into prior to the loss or occurrence.
**Name of Project:** Those projects on file with the Company.

. . . .

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy:
WHO IS AN INSURED (SECTION II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" which is performed at the project designated above. This Endorsement applies only to ongoing operations performed by the Named Insured on or after the effective date of this Endorsement.

. . . .

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Lebaron & Carroll, CDI, is an independent insurance agency that negotiated the Policies on behalf of Structures and was not an agent of American Safety in this transaction. Lebaron & Carroll, CDI, issued the Certificate of Liability Insurance to GFTDC showing Structures was insured by "American Safety Indemnity c/o CRC, Chicago."

On October 19, 2004, Astragal Condominium Unit Owners Association ("Astragal HOA") filed a lawsuit against Astragal and GFTDC alleging numerous defects in the construction of the Villas ("HOA Lawsuit"). At all relevant times, GFTDC was insured under a commercial general liability policy issued by American Family Mutual Insurance Co. ("American Family"). American Family provided a defense to GFTDC in the HOA Lawsuit.

On August 11, 2005, GFTDC filed a third-party complaint in the HOA Lawsuit against Structures and other subcontractors to recover damages against the subcontractors to the extent they had failed to perform their scope of work in a workmanlike manner. Gust Rosenfeld represented GFTDC in the HOA Lawsuit. Matthew Bedwell, an attorney at Gust Rosenfeld, provided Gloria Zanella, a legal secretary for Gust Rosenfeld, with a draft letter to be mailed to each of the subcontractors named as third-party defendants to GFTDC's third-party complaint with a copy to each of the insurance companies indicated on certificates of liability insurance or other insurance documents for each subcontractor. In addition to the draft letter, Bedwell provided Zanella with a list of subcontractors named as third-party defendants and a binder of certificates of liability for the listed subcontractors. Zanella prepared a letter addressed to each of the subcontractors and listed the insurance companies indicated on the certificates of liability insurance for each particular subcontractor as recipients of a copy of the letter.

To obtain addresses for the insurance companies, Zanella researched the Arizona Department of Insurance website, the internet, and other sources. She then compiled the insurance companies' addresses on a document titled "List of Insurer Addresses." After obtaining the addresses, Zanella printed a copy of each letter for each of insurance companies indicated on the letter as a copy recipient. Zanella addressed envelopes for each insurance company that was copied on one of the letters and enclosed a copy of the signed letter and enclosures provided by Bedwell. After stuffing the envelopes and sealing them, Zanella placed the envelopes in the firm's outgoing mail baskets for postage to be affixed by mail room employees and for delivery by Central Courier personnel to the United States Postal Service. She did not arrange for any of the letters to be mailed by certified or registered mail.

If Zanella was unable to locate an insurance company's address, a copy was mailed once the address was obtained. Zanella's affidavit states, "To my knowledge, every subcontractor and insurance company carbon copied on the letter was mailed a

copy." Her affidavit does not state that she found addresses for all of the insurance companies.

A letter dated August 17, 2005, was sent to Bob Yost, Structures, that demanded a defense and indemnity from Structures as well as insurance coverage as an additional insured under Structures' insurance policy ("Structures Tender Letter"). The letter states that Structures was "required to name GFTDC as an additional insured under the policies issued by American Safety Indemnity, CRC, Chicago, American States/Safaeco [sic], CA Office, Employers Mutual Companies and General Insurance Company of America." The Structures Tender Letter also states:

> Accordingly, please immediately place your insurance carrier on notice of this claim and further put them on notice that GFTDC will be looking to them directly as an additional insured for coverage under the policy in regard to the allegations being presented by the condominium unit owners association. By copy of this correspondence to your agent and insurance carrier, we are formally placing them on notice of GFTDC's demand for defense and coverage under the terms and conditions of the policy of insurance noted above and noted in the attached certificate. GFTDC formally demands that your insurance carrier respond to this request for defense and coverage within 20 days. In addition, GFTDC intends to look to you and your insurance carrier for the payment of all expenses and costs associated with this defense as it relates to the allegations from the condominium unit owners association. Please confirm within 20 days of the date of this correspondence your agreement to defend and indemnity [sic] GFTDC completely in regard to any and all allegations being presented.

The Structures Tender Letter indicates a copy was mailed to "American Safety Indemnity, CRC, Chicago." However, Gust Rosenfeld's "List of Insurer Addresses" includes "American Safety Indemnity, CRC, Chicago," without any address. Zanella's affidavit does not state that she recalls, or has personal knowledge of, finding an address for American Safety or CRC, addressing an envelope to American Safety or CRC, or mailing a letter addressed to American Safety or CRC. It does not state that she actually mailed a copy of the Structures Tender Letter to American Safety or CRC.

On September 13, 2005, CRC sent to American Safety a First Report of Loss pertaining to the HOA Lawsuit. The First Report of Loss included the following attachments: September 6, 2005 Letter from Roberts, Rowley & Chapman, Ltd. to

1  Structures, Summons, Certificate of Compulsory Arbitration, and Third-Party Complaint.
2  The September 6, 2005 letter stated that Roberts, Rowley & Chapman, Ltd., as statutory
3  agent for Structures, had received service of the HOA Lawsuit on September 6, 2005,
4  which named Structures as a defendant. The letter also stated: "I assume that you will
5  turn this matter over to your insurance carrier for handling. However, if that assumption
6  is incorrect and you need us to assist you in defending the lawsuit, please contact us.
7  Otherwise, we will not do anything further on this matter unless we hear from you." The
8  First Report of Loss did not include a copy of the Structures Tender Letter.

9  As a result of receiving the First Report of Loss, American Securities opened a
10 claim file for the loss and assigned it Claim No. 11009. American Securities has no
11 record of a prior claim involving Structures or the Astragal project before September
12 2005. Jean Fisher, the American Securities claims manager who oversaw all construction
13 defect claims in 2005, conducted an exhaustive review of files related to Claim No. 11009
14 and found that American Securities has no evidence of any receipt of any tender of
15 defense or demand for indemnity by GFTDC or its legal counsel to American Securities
16 under the Policies with respect to the HOA Lawsuit. Further, Fisher found that American
17 Securities' claim file does not contain a copy of the Structures Tender Letter.

18 On November 28, 2005, CRC received a copy of the Structures Tender Letter by
19 fax from Lebaron & Carroll, CDI. There is no evidence in the record that CRC forwarded
20 a copy of the Structures Tender Letter to American Securities.

21 American Family is seeking to recover defense costs and indemnification from
22 American Safety under the theory American Family and American Safety both insured
23 GFTDC. American Family's Third Amended Complaint seeks (1) indemnification in
24 connection with the Astragal HOA property damage claims, (2) contribution for the cost
25 of the defense, and (3) equitable contribution for breach of duties by failing to participate
26 in the defense of GFTDC.

## III. Analysis

Under the doctrine of equitable contribution, an insurer who has paid a claim may seek contribution directly from other carriers that are liable for the same loss. *W. Agric. Ins. Co. v. Indus. Indem. Ins. Co.*, 838 P.2d 1353, 1355 (Ariz. App. 1992). One insurer may be required to contribute to another insurer's payment of a claim if the policies cover (1) the same parties, (2) in the same interest, (3) in the same property, and (4) against the same casualty. *Id.* The doctrine is appropriate where two insurers have agreed to indemnify the same party because it avoids the loss claimant making an arbitrary choice as to which insurer should pay and it does not give one indemnitor an incentive to avoid paying a just claim to its insured hoping the other indemnitor will pay. *Id.* at 1356. However, if a party to an insurance policy breaches it, the other party is no longer obligated to perform its contractual obligations under the policy. *Holt v. Utica Mut. Ins. Co.*, 759 P.2d 623, 628 (Ariz. 1988).

### A. GFTDC Failed to Tender Its Defense and Demand for Indemnity to American Safety.

American Safety contends that American Family may not obtain equitable contribution from American Safety because GFTDC failed to tender its defense and to demand indemnification. American Family contends that genuine issues of material fact regarding GFTDC's tender of defense preclude summary judgment.

Before an insurer's duty to defend may be found, it must be shown that the insurer received sufficient notice that the insured was tendering the defense to it. *Purvis v. Hartford Accident & Indem. Co.*, 877 P.2d 827, 830 (Ariz. App. 1994). A tender of defense, "whether written or oral, must contain full and fair information concerning the pending action and an unequivocal, certain and explicit demand to undertake the defense thereof, with an offer to surrender control of the action to the indemnitor at least as to that portion of the claim for which the indemnitee seeks ultimately to hold the indemnitor liable." *Litton Sys., Inc. v. Shaw's Sales & Serv., Ltd.*, 579 P.2d 48, 52 (Ariz. App. 1978); *accord Purvis*, 877 P.2d at 830. "What is required is knowledge that the suit is

- 10 -

potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Purvis*, 877 P.2d at 830 (quoting *Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir. 1985)).

**1. The "Mail Delivery Rule" Does Not Create a Presumption that American Safety Received the Structures Tender Letter.**

Arizona law recognizes a "mail delivery rule." *Lee v. Arizona*, 182 P.3d 1169, 1171, ¶ 8 (Ariz. 2008). Under this common law rule:

> [T]here is a presumption that a "letter properly addressed, stamped and deposited in the United States mail will reach the addressee." That is, proof of the fact of mailing will, absent any contrary evidence, establish that delivery occurred. If, however, the addressee denies receipt, the presumption of delivery disappears, but the fact of mailing still has evidentiary force. The denial of receipt creates an issue of fact that the factfinder must resolve to determine if delivery actually occurred.

*Id.* (citations omitted). *See Anderson v. United States*, 966 F.2d 487, 491-92 (9th Cir. 1992) (mailbox rule applied where plaintiff's contention she had mailed her tax return was supported by her notarized statement that she had mailed the return, her sworn testimony that she had seen the postal clerk postmark her return and place the envelope in the mailing pouch, and the affidavit of a witness who accompanied plaintiff to the post office, waited in the car, and saw plaintiff return to the car from the post office without the envelope that had contained the tax return).

American Family urges the Court to presume, under the common law mailbox rule, that the Structures Tender Letter was received by American Safety because of its "proper and timely mailing." The "mail delivery rule," however, requires "proof of the fact of mailing." *See Lee*, 182 P.3d at 1171, ¶ 8. The evidence submitted by American Family shows only that GFTDC's counsel prepared tender letters to numerous subcontractors, intended to mail copies to all of the subcontractors' insurers, found addresses for some but not all of the insurers, prepared for mailing copies to those insurers for which addresses were found, kept a list of insurers' addresses that did not include an address for American Safety or CRC, and placed some envelopes with letters in the firm's outgoing mail baskets. Without an address, GFTDC's counsel could not have mailed a copy of the

- 11 -

Structures Tender Letter to either American Safety or CRC. American Family has provided no evidence GFTDC ever found an address for American Safety or CRC or that the Structures Tender Letter was actually mailed to American Safety, or CRC, by GFTDC or its counsel. There is, therefore, no basis for applying the "mail delivery rule" or presuming that American Safety received the Structures Tender Letter.

### 2. CRC Did Not Have Express or Ostensible Agency Authority to Accept a Tender of Defense or a Demand for Indemnity on American Safety's Behalf.

American Family contends that CRC had actual authority as American Safety's agent to receive GFTDC's tender on behalf of American Safety. Although the acts of the insurance agent are imputable to the insurer, those of the independent agent or broker generally are not. *Curran v. Indus. Comm'n*, 752 P.2d 523, 525 (Ariz. App. 1988). However, the broker becomes the agent of the insurer where the insurer's actions create actual or apparent authority for a broker to act on its behalf. *Id.* at 526. Thus, actual or ostensible agency may be created by the insurer's actions, but not by the broker's. *See id.* Whether an agency relationship exists is a question of law for the court when the material facts from which the agency relationship could be inferred are not in dispute. *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1140 (Ariz. 1982).

CRC is a broker that represents insureds. The Producer Agreement expressly states that CRC shall have no authority to incur any liability on American Safety's behalf unless such authority is expressly granted to CRC by American Safety in writing. And the Producer Agreement does not expressly grant CRC authority to accept a tender of defense or demand for indemnity on American Safety's behalf. Therefore, CRC does not have actual authority to act on American Safety's behalf.

Further, the Certificate of Liability Insurance showing Structures was insured by "American Safety Indemnity c/o CRC, Chicago" was issued by Lebaron & Carroll, CDI, not American Safety. American Family does not dispute that Lebaron & Carroll, CDI, was not an agent of American Safety in this transaction. Therefore, Lebaron & Carroll,

1  CDI's actions do not create ostensible authority for CRC to accept tenders of defense or
2  demands for indemnity on behalf of American Safety or act as American Safety's agent.
3  American Family also contends that CRC's receipt of a copy of the Structures
4  Tender Letter from Lebaron & Carroll, CDI, by fax in November 2005 constitutes proper
5  and timely tender from GFTDC to American Safety because CRC was contractually
6  obligated to immediately notify American Safety of any claim on any insurance policy of
7  which CRC became aware. Even if it were presumed that CRC would comply with its
8  obligation to notify American Safety if it became aware of a claim on one of American
9  Safety's policies and that CRC interpreted the Structures Tender Letter as a claim on one
10 of American Safety's policies, American Safety's lack of receipt would rebut the
11 presumption.
12 American Safety has produced evidence negating an essential element of
13 American Family's case and shown that American Family does not have enough evidence
14 to carry its ultimate burden of persuasion at trial. *See Nissan Fire*, 210 F.3d at 1105-06.
15 American Family has not submitted direct evidence of a genuine issue of fact regarding
16 GFTDC's failure to tender its defense and demand for indemnity to American Safety. *See*
17 *Eisenberg*, 815 F.2d at 1289. GFTDC's failure to tender its defense and demand for
18 indemnity to American Safety relieves American Safety of its obligations to GFTDC
19 under the Policies.

20 **B.    GFTDC Breached Its Contractual Obligation to Immediately Send American Safety Copies of Any Demands, Notices, Summonses or**
21 **Legal Papers Regarding the HOA Lawsuit.**

22 American Safety contends that GFTDC breached (a) Section IV, paragraph 2(c)(1)
23 of the Policies, which required GFTDC to immediately send American Safety "copies of
24 any demands, notices, summonses, or legal papers received in connection with the claim
25 or 'suit,'" and (b) the Service of Suit endorsement requiring GFTDC to send American
26 Safety documents related to the HOA Lawsuit, by failing to send American Safety a copy
27 of the HOA Lawsuit complaint or summons served on GFTDC on October 25, 2004, or a
28 demand for defense. Even if GFTDC had mailed the Structures Tender Letter to

American Safety, American Safety contends GFTDC should have attempted further contact with American Safety when it did not receive a response within 20 days as demanded by the letter to ensure that American Safety was notified as required by the Policies. American Family contends that it would be inequitable to enforce the Policies' notice requirements because American Safety did not deliver a copy of the Policies to American Family and therefore GFTDC did not have notice of the notice requirements.

An insured's failure to give notice does not relieve an insurer of its contractual liability unless it can show that it has been prejudiced thereby. *Lindus v. N. Ins.*, 438 P.2d 311, 315 (Ariz. 1968); *Zuckerman v. Transamerica Ins. Co.*, 650 P.2d 441, 445, 447 (Ariz. 1982); *Liberty Mut. Fire Ins. Co. v. Mandile*, 963 P.2d 295, 302 (Ariz. App. 1997). Delay alone does not establish prejudice. *Mandile*, 963 P.2d at 302.

In *Mandile*, the insureds' five-year-old son was struck by an underinsured driver. 963 P.2d at 296. Shortly after settling with the driver for his policy limits, the insureds submitted their claim for underinsured motorist ("UIM") coverage to their insurer. Although the UIM insurer did not receive notice until almost six years after the accident and one month after the insureds settled with the driver, it was not prejudiced by any delay in receiving notice of the insureds' UIM claim because UIM coverage, like excess coverage, is triggered only upon the payment of another's coverage limits and the UIM insurer did not demonstrate that it would have done anything before settlement with the driver. *Id.* at 301, 303. In contrast, breaching a consent-to-settle provision has been found to prejudice a primary insurer as a matter of law where the insurer was not consulted about the settlement, the settlement was not tendered to it, and the insurer had no opportunity to participate in or consent to the ultimate settlement decision. *Motiva Enterprises, LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 386 (5th Cir. 2006).

Here, American Family contends that American Safety was not prejudiced by the lack of notice because CRC received notice and CRC was American Safety's agent, an argument disposed of above. It does not dispute that failure to receive notice caused actual prejudice by depriving American Safety of opportunity to investigate the claim,

- 14 -

participate in GFTDC's defense, control the litigation, and contribute to the settlement agreement reached in the HOA Lawsuit.

Relying on *Zuckerman*, American Family contends that "it would be inequitable and contrary to GFTDC's reasonable expectations to enforce a boilerplate policy conditions [sic] of which it had no notice" because American Safety did not provide GFTDC a copy of the Policies. In *Zuckerman*, an insurance policy for fire loss contained a clause requiring that any action for recovery on a claim insured under the policy must be commenced within twelve months after the loss, which was significantly shorter than the Arizona limitations period for an action on a written contract. 650 P.2d at 442-43, 444. Within the one-year period, the insured consulted counsel and also negotiated directly with the insurer's adjuster. Although tentative settlement was reached, the agreement fell apart, and the insured filed an action against the insurer three months after the expiration of the one-year policy period. *Id.* at 443. The Arizona Supreme Court held the insurer was estopped to enforce the adhesive clause because it did "no more than provide a trap for the unwary." *Id.* at 448-49. The court further found the insurer was not prejudiced by the fact that the suit was brought more than one year after the loss occurred because there never was any dispute regarding the loss, its cause, the existence of coverage for the loss, or the amount of damage. *Id.*

But the Policies' requirements that insureds immediately send American Safety copies of legal papers received in connection with lawsuits against the insureds is not "a trap for the unwary." GFTDC's subcontract with Structures required Structures to obtain insurance that named GFTDC as an additional insured. A Certificate of Liability Insurance was issued to GFTDC showing Structures was insured by American Safety. If GFTDC wanted to read the specific language of the Policies, it could have requested that American Safety send it a copy. Requiring insureds to send American Safety copies of legal papers received in connection with lawsuits against the insureds for which they want coverage is not outside of reasonable expectations and is identical to the requirement in other subcontractors' policies covering GFTDC as an additional insured. American

- 15 -

1  Safety does not contend that GFTDC failed to send specific documents or comply with specific procedures or timelines—GFTDC did not send American Safety *anything* it received in connection with the HOA Lawsuit.

GFTDC's counsel prepared a letter to Structures that identified American Safety as a copy recipient. American Family cannot claim that GFTDC did not know that the Policies required it to send American Safety papers received in connection with the HOA Lawsuit or was surprised by such a requirement. It is not inequitable to find GFTDC breached Section IV, paragraph 2(c)(1) of the Policies and the Service of Suit endorsement requiring GFTDC to send American Safety documents related to the HOA Lawsuit.

GFTDC's breach of the Policies' notice requirements caused American Safety prejudice and relieves American Safety of its obligations to GFTDC under the Policies.

### IV. Attorneys' Fees

American Safety seeks award of attorneys' fees under A.R.S. § 12-341.01(A). Under the statute, the Court may exercise its discretion to award attorneys' fees to the successful party in any contested action arising out of a contract upon consideration of multiple factors. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). Because American Safety has not addressed any of the factors the Court should consider in determining whether to exercise its discretion under the statute and has not presented in any argument in favor of exercising such discretion, the Court will deny American Safety's request for attorneys' fees.

### V. Rule 54(b) Certification

There is no just reason for delay in entry of final judgment in favor of Defendant American Safety Indemnity Company. Granting American Safety summary judgment resolves all claims in this action against this Defendant. Further, the issues decided in this Order are discrete and do not overlap with issues to be decided later in this case. Moreover, an immediate appeal of this Order would not threaten duplication of judicial work through repetitive appeals on related issues or transactions and may contribute to

appellate economy by permitting review of this Order in conjunction with review of other Orders issued today in this action on similar issues. For these reasons, pursuant to Fed. R. Civ. P. 54(b), the Court directs entry of final judgment against Plaintiff American Family Mutual Insurance Co. and in favor of Defendant American Safety Indemnity Company.

IT IS THEREFORE ORDERED that Defendant American Safety Indemnity Company's Motion for Summary Judgment (Phase One) (doc. #467) is granted.

IT IS FURTHER ORDERED that American Safety Indemnity Company's request for attorneys' fees and costs pursuant to A.R.S. § 12-341.01(A) is denied.

IT IS FURTHER ORDERED that the Court expressly determines that there is no just reason for delay in the entry of final judgment in favor of Defendant American Safety Indemnity Company. The Court directs the Clerk to enter final judgment against Plaintiff American Family Mutual Insurance Co. and in favor of Defendant American Safety Indemnity Company.

DATED this 2nd day of September, 2009.

_____
Neil V. Wake
United States District Judge