**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Family Mutual Insurance Co., a Wisconsin corporation,<br><br>Plaintiff,<br><br>vs.<br><br>National Fire & Marine Insurance Co., a foreign corporation; et al,<br><br>Defendants. | No. CV07-2237-PHX-NVW<br><br>**ORDER**<br><br>[Not for Publication] |

Pending before the Court is Defendant National Fire & Marine Insurance Company's Motion for Summary Judgment (Phase One) (doc. #459).

A party moving for summary judgment must "file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Any party opposing a motion for summary judgment must file a separate statement responding to each paragraph of the moving party's separate statement of facts and setting forth any additional facts that establish a genuine issue of material or otherwise preclude judgment in favor of the moving party. LRCiv 56.1(b). LRCiv 56.1(d) permits the moving party to file a "reply memorandum," but does not permit the moving party to file a separate statement responding to the nonmoving party's separate statement. Any evidentiary objections to the nonmoving party's separate statement may be included in the reply memorandum, but may not be

1  made in a separate statement.  Therefore, the Court disregards and does not rely upon
2  Defendant National Fire & Marine Insurance Company's Response to Plaintiff's Separate
3  Statement of Facts and Reply Statement of Undisputed Facts in Support of Defendant's
4  Motion for Summary Judgment (doc. #543), including the supplemental declaration of
5  Reed Grandgenett (doc. #543-2).

## I. Legal Standard for Summary Judgment

The Court should grant summary judgment if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce evidence and persuade the Court there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law. *Id.* at 248. A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nature of this responsibility varies, however, depending on whether the moving party or the nonmoving party would bear the burden of proof at trial on the issues relevant to the summary judgment motion. If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of

persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*

In the context of summary judgment, the court presumes the nonmoving party's evidence is true and draws all inferences from the evidence in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). If the nonmoving party produces direct evidence of a genuine issue of fact, the court does not weigh such evidence against the moving party's conflicting evidence, but rather submits the issue to the trier of fact for resolution. *Id.*

However, each numbered paragraph of the moving party's separate statement of facts shall be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts. LRCiv 56.1(b).

**II.    Facts Undisputed or Presumed True for Summary Judgment**

Astragal, L.L.C. ("Astragal") was the developer of the project commonly known as Astragal Luxury Villas at Thompson Peak located in Maricopa County, Arizona ("Villas"). Astragal entered into a contract with George F. Tibsherany Development Company ("GFTDC") to serve as the general contractor for the Villas. GFTDC entered into a subcontract agreement with Central Valley Specialties, Inc. ("Central Valley"), among others, to perform work at the Villas. The subcontract required Central Valley to maintain specifically described insurance coverage and to cause all its insurance companies to name GFTDC as an additional insured on all insurance policies required under the subcontract. A Certificate of Liability Insurance dated August 13, 2003, was

issued to GFTDC showing Central Valley was insured by National Fire & Marine Insurance Company ("National Fire").

National Fire issued two commercial general liability policies to Central Valley: policy number 72LP151863, effective August 13, 2002, through August 13, 2003; and policy number 71LP158280, effective August 13, 2003, through August 13, 2004 (collectively "Policies"). The Policies include a blanket additional insured Endorsement labeled "Additional Insured–Owners, Lessees or Contractors–Scheduled Person or Organization (For Use When Contractual Liability Coverage Is Not Provided to You in This Policy)." The Policies also include the following language:

> **2. Duties In The Event of Occurrence, Offense, Claim Or Suit**
>
>     **a.** You[1] must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>         **(1)** How, when and where the "occurrence" or offense took place;
>         **(2)** The names and addresses of any injured persons and witnesses; and
>         **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
>     **b.** If a claim is made or "suit" is brought against any insured, you must:
>         **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>         **(2)** Notify us as soon as practicable.
>
>     You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
>     **c.** You and any other involved insured must:
>         **(1)** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";
>         **(2)** Authorize us to obtain records and other information;
>         **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>         **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which the insurance may also apply.

---

[1] "You" in the Policies refers to Central Valley.

      **d.**      No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

On October 19, 2004, Astragal Condominium Unit Owners Association ("Astragal HOA") filed a lawsuit against Astragal and GFTDC alleging numerous defects in the construction of the Villas ("HOA Lawsuit"). At all relevant times, GFTDC was insured under a commercial general liability policy issued by American Family Mutual Insurance Co. ("American Family"). American Family provided a defense to GFTDC in the HOA Lawsuit.

On August 11, 2005, GFTDC filed a third-party complaint in the HOA Lawsuit against Central Valley and other subcontractors to recover damages against the subcontractors to the extent they had failed to perform their scope of work in a workmanlike manner. Gust Rosenfeld represented GFTDC in the HOA Lawsuit. Matthew Bedwell, an attorney at Gust Rosenfeld, provided Gloria Zanella, a legal secretary for Gust Rosenfeld, with a draft letter to be mailed to each of the subcontractors named as third-party defendants to GFTDC's third-party complaint with a copy to each of the insurance companies indicated on certificates of liability insurance or other insurance documents for each subcontractor. In addition to the draft letter, Bedwell provided Zanella with a list of subcontractors named as third-party defendants and a binder of certificates of liability for the listed subcontractors. Zanella prepared a letter addressed to each of the subcontractors and listed the insurance companies indicated on the certificates of liability insurance for each particular subcontractor as recipients of a copy of the letter.

To obtain addresses for the insurance companies, Zanella researched the Arizona Department of Insurance website, the internet, and other sources. She then compiled the insurance companies' addresses on a document titled "List of Insurer Addresses." After obtaining the addresses, Zanella printed a copy of each letter for each of insurance companies indicated on the letter as a copy recipient. Zanella addressed envelopes for each insurance company that was copied on one of the letters and enclosed a copy of the signed letter and enclosures provided by Bedwell. After stuffing the envelopes and

sealing them, Zanella placed the envelopes in the firm's outgoing mail baskets for postage to be affixed by mail room employees and for delivery by Central Courier personnel to the United States Postal Service. She did not arrange for any of the letters to be mailed by certified or registered mail.

If Zanella was unable to locate an insurance company's address, a copy was mailed once the address was obtained. Zanella's affidavit states, "To my knowledge, every subcontractor and insurance company carbon copied on the letter was mailed a copy." Her affidavit does not state that she recalls, has personal knowledge of, or has records of printing a copy for National Fire, addressing an envelope to National Fire, or mailing a letter addressed to National Fire.

A letter dated August 17, 2005, was sent to Michael Howard, Central Valley, that demanded a defense and indemnity from Central Valley as well as insurance coverage as an additional insured under Central Valley's insurance policy ("Central Valley Tender Letter"). The letter states that Central Valley was "required to name GFTDC as an additional insured under the policies issued by National Fire & Marine Insurance Company, National Union Fire Insurance Company, Western World Insurance Company and Owners Insurance Company." The Central Valley Tender Letter also states:

> Accordingly, please immediately place your insurance carrier on notice of this claim and further put them on notice that GFTDC will be looking to them directly as an additional insured for coverage under the policy in regard to the allegations being presented by the condominium unit owners association. By copy of this correspondence to your agent and insurance carrier, we are formally placing them on notice of GFTDC's demand for defense and coverage under the terms and conditions of the policy of insurance noted above and noted in the attached certificate. GFTDC formally demands that your insurance carrier respond to this request for defense and coverage within 20 days. In addition, GFTDC intends to look to you and your insurance carrier for the payment of all expenses and costs associated with this defense as it relates to the allegations from the condominium unit owners association. Please confirm within 20 days of the date of this correspondence your agreement to defend and indemnity [sic] GFTDC completely in regard to any and all allegations being presented.

The Central Valley Tender Letter indicates a copy was mailed to each of the following: National Fire & Marine Ins. Co., National Union Fire Ins. Co., Western World Ins. Co., and Owners Ins. Co.

However, National Fire denies receipt of the Central Valley Tender Letter. The Declaration of Reed Grandgenett, Special Claims Administrator for National Fire, states that he has personal knowledge that "National Fire conducted an exhaustive review of its files to determine whether [GFTDC] tendered its defense and indemnification to National Fire with respect to the [HOA Lawsuit] pursuant to the [Policies]" and that "National Fire was unable to locate receipt of any tender for defense or indemnification by [GFTDC] with respect to [the HOA Lawsuit] under the [Policies]."

American Family is seeking to recover defense costs and indemnification from National Fire under the theory American Family and National Fire both insured GFTDC. American Family's Third Amended Complaint seeks (1) indemnification in connection with the Astragal HOA property damage claims, (2) contribution for the cost of the defense, and (3) equitable contribution for breach of duties by failing to participate in the defense of GFTDC.

### III. Analysis

Under the doctrine of equitable contribution, an insurer who has paid a claim may seek contribution directly from other carriers that are liable for the same loss. *W. Agricultural Ins. Co. v. Indus. Indem. Ins. Co.*, 838 P.2d 1353, 1355 (Ariz. App. 1992). One insurer may be required to contribute to another insurer's payment of a claim if the policies cover (1) the same parties, (2) in the same interest, (3) in the same property, and (4) against the same casualty. *Id.* The doctrine is appropriate where two insurers have agreed to indemnify the same party because it avoids the loss claimant making an arbitrary choice as to which insurer should pay and it does not give one indemnitor an incentive to avoid paying a just claim to its insured hoping the other indemnitor will pay. *Id.* at 1356. However, if a party to an insurance policy breaches it, the other party is no

longer obligated to perform its contractual obligations under the policy. *Holt v. Utica Mut. Ins. Co.*, 759 P.2d 623, 628 (Ariz. 1988).

### A. GFTDC Failed to Properly Tender Its Demand for Defense and Indemnification to National Fire.

National Fire contends that American Family may not obtain equitable contribution from National Fire because GFTDC failed to tender its defense and demand indemnification. American Family contends that genuine issues of material fact regarding GFTDC's tender of defense preclude summary judgment.

Before an insurer's duty to defend may be found, it must be shown that the insurer received sufficient notice that the insured was tendering the defense to it. *Purvis v. Hartford Accident & Indem. Co.*, 877 P.2d 827, 830 (Ariz. App. 1994). A tender of defense, "whether written or oral, must contain full and fair information concerning the pending action and an unequivocal, certain and explicit demand to undertake the defense thereof, with an offer to surrender control of the action to the indemnitor at least as to that portion of the claim for which the indemnitee seeks ultimately to hold the indemnitor liable." *Litton Sys., Inc. v. Shaw's Sales & Serv., Ltd.*, 579 P.2d 48, 52 (Ariz. App. 1978); *accord Purvis*, 877 P.2d at 830. "What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Purvis*, 877 P.2d at 830 (quoting *Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir. 1985)).

Arizona law recognizes a "mail delivery rule." *Lee v. Arizona*, 182 P.3d 1169, 1171, ¶ 8 (Ariz. 2008). Under this common law rule:

> [T]here is a presumption that a "letter properly addressed, stamped and deposited in the United States mail will reach the addressee." That is, proof of the fact of mailing will, absent any contrary evidence, establish that delivery occurred. If, however, the addressee denies receipt, the presumption of delivery disappears, but the fact of mailing still has evidentiary force. The denial of receipt creates an issue of fact that the factfinder must resolve to determine if delivery actually occurred.

*Id.* (citations omitted). *See Anderson v. United States*, 966 F.2d 487, 491-92 (9th Cir. 1992) (mailbox rule applied where plaintiff's contention she had mailed tax return was

- 8 -

supported by her notarized statement that she had mailed the return, her sworn testimony that she had seen the postal clerk postmark her return and place the envelope in the mailing pouch, and the affidavit of a witness who accompanied plaintiff to the post office, waited in the car, and saw plaintiff return to the car from the post office without the envelope that had contained the tax return).

American Family urges the Court to presume, under the common law mailbox rule, that the Central Valley Tender Letter was received by National Fire. The "mail delivery rule," however, requires "proof of the fact of mailing." *See Lee*, 182 P.3d at 1171, ¶ 8. The evidence submitted by American Family shows only that GFTDC's counsel prepared tender letters to numerous subcontractors, intended to mail copies to all of the subcontractors' insurers, did not mail all of the letters and copies at the same time, placed some envelopes with letters in the firm's outgoing mail baskets, and did not send any of the letters or copies by registered or certified mail. It does not show that anyone has personal knowledge of, or records of, printing a copy for National Fire, addressing an envelope to National Fire, or mailing a letter addressed to National Fire. American Family has not submitted proof that the Central Valley Tender Letter was actually mailed to National Fire by GFTDC or its counsel. There is, therefore, no basis for applying the "mail delivery rule" or presuming National Fire received the Central Valley Tender Letter.

National Fire has produced evidence negating an essential element of American Family's case and shown that American Family does not have enough evidence to carry its ultimate burden of persuasion at trial. *See Nissan Fire*, 210 F.3d at 1105-06. American Family has not submitted direct evidence of a genuine issue of fact regarding GFTDC's failure to tender its defense and demand for indemnification to National Fire. *See Eisenberg*, 815 F.2d at 1289. GFTDC's failure to tender its defense and demand for indemnity to National Fire relieves National Fire of its obligations to GFTDC under the Policies.

**B. GFTDC Breached Its Contractual Obligation to Immediately Send Northland Copies of Any Demands, Notices, Summonses or Legal Papers Regarding the HOA Lawsuit.**

National Fire contends that GFTDC breached Section IV, paragraph 2(c)(1) of the Policies, which required GFTDC to immediately send National Fire "copies of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit'" by failing to send National Fire a copy of the HOA Lawsuit complaint or summons served on GFTDC on October 25, 2004, or a demand for defense. Even if GFTDC had mailed the Central Valley Tender Letter to National Fire, National Fire contends GFTDC should have attempted further contact with National Fire when it did not receive a response within 20 days as demanded by the letter to ensure that National Fire was notified as required by the Policies. American Family contends that it would be inequitable to enforce the Policies' notice requirements because National Fire did not deliver a copy of the Policies to National Fire and therefore GFTDC did not have notice of the notice requirements.

An insured's failure to give notice does not relieve an insurer of its contractual liability unless it can show that it has been prejudiced thereby. *Lindus v. N. Ins.*, 438 P.2d 311, 315 (Ariz. 1968); *Zuckerman v. Transamerica Ins. Co.*, 650 P.2d 441, 445, 447 (Ariz. 1982); *Liberty Mut. Fire Ins. Co. v. Mandile*, 963 P.2d 295, 302 (Ariz. App. 1997). Nonetheless, American Family does not dispute that failure to receive notice caused actual prejudice by depriving National Fire of opportunity to investigate the claim, participate in GFTDC's defense, control the litigation, and contribute to the settlement agreement reached in the HOA Lawsuit. *See Motiva Enterprises, LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 386 (5th Cir. 2006) (breaching a consent-to-settle provision prejudiced a primary insurer as a matter of law where the insurer was not consulted about the settlement, the settlement was not tendered to it, and the insurer had no opportunity to participate in or consent to the ultimate settlement decision).

Relying on *Zuckerman*, American Family contends that "it would be inequitable and contrary to GFTDC's reasonable expectations to enforce a boilerplate policy

conditions [sic] of which it had no notice" because National Fire did not provide GFTDC a copy of the Policies. In *Zuckerman*, an insurance policy for fire loss contained a clause requiring that any action for recovery on a claim insured under the policy must be commenced within twelve months after the loss, which was significantly shorter than the Arizona limitations period for an action on a written contract. 650 P.2d at 442-43, 444. Within the one-year period, the insured consulted counsel and also negotiated directly with the insurer's adjuster. Although tentative settlement was reached, the agreement fell apart, and the insured filed an action against the insurer three months after the expiration of the one-year policy period. *Id.* at 443. The Arizona Supreme Court held the insurer was estopped to enforce the adhesive clause because it did "no more than provide a trap for the unwary." *Id.* at 448-49. The court further found the insurer was not prejudiced by the fact that the suit was brought more than one year after the loss occurred because there never was any dispute regarding the loss, its cause, the existence of coverage for the loss, or the amount of damage. *Id.*

Here, the Policies' requirements that insureds immediately send National Fire copies of legal papers received in connection with lawsuits against the insureds is not "a trap for the unwary." GFTDC's subcontract with Central Valley required Central Valley to obtain insurance that named GFTDC as an additional insured. A Certificate of Liability Insurance was issued to GFTDC showing Central Valley was insured by National Fire. If GFTDC wanted to read the specific language of the Policies, it could have requested that National Fire send it a copy. Requiring insureds to send National Fire copies of legal papers received in connection with lawsuits against the insureds for which they want coverage is not outside of reasonable expectations and is identical to the requirement in other subcontractors' policies covering GFTDC as an additional insured. National Fire does not contend that GFTDC failed to send specific documents or comply with specific procedures or timelines—GFTDC did not send National Fire *anything* it received in connection with the HOA Lawsuit.

Moreover, the Policies included a blanket additional insured endorsement. If GFTDC was covered as an additional insured under the Policies as a result of entering into the subcontract with Central Valley, National Fire likely would not have received notice of that event or any need to send GFTDC a copy of the Policies.

GFTDC's counsel prepared a letter to Central Valley that identified National Fire as a copy recipient. American Family cannot claim that GFTDC did not know that the Policies required it to send National Fire papers received in connection with the HOA Lawsuit or was surprised by such a requirement. It is not inequitable to find GFTDC breached Section IV, paragraph 2(c)(1) of the Policies, which required GFTDC to send National Fire documents related to the HOA Lawsuit.

GFTDC's breach of the Policies' notice requirements relieves National Fire of its obligations to GFTDC under the Policies.

## IV. Attorneys' Fees

National Fire seeks award of attorneys' fees under A.R.S. § 12-341.01(A). Under the statute, the Court may exercise its discretion to award attorneys' fees to the successful party in any contested action arising out of a contract upon consideration of multiple factors. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). Because National Fire has not addressed any of the factors the Court should consider in determining whether to exercise its discretion under the statute and has not presented in any argument in favor of exercising such discretion, the Court will deny National Fire's request for attorneys' fees.

## V. Rule 54(b) Certification

This Order resolves entirely American Family's claims in this lawsuit against National Fire that arise from National Fire's commercial general liability policies issued to Central Valley, policy numbers 71LP158280 and 72LP151863. The issues decided here are discrete and do not overlap with issues to be decided later in this lawsuit. American Family has pled other claims in this lawsuit against National Fire arising from policies issued to other insureds, but those claims are not affected by this Order.

Moreover, an immediate appeal of this Order would not threaten duplication of judicial work through repetitive appeals on related issues or transactions and may contribute to appellate economy by permitting review of this Order in conjunction with review of other Orders issued and certified as final today in this action on similar issues.

For these reasons, pursuant to Fed. R. Civ. P. 54(b), the Court finds no just reason for delay in the entry of final judgment and directs entry of final judgment against Plaintiff American Family Mutual Insurance Co. and in favor of Defendant National Fire & Marine Insurance Company on American Family's claims in this lawsuit against National Fire arising from National Fire's commercial general liability policies issued to Central Valley, policy numbers 71LP158280 and 72LP151863.

IT IS THEREFORE ORDERED that Defendant National Fire & Marine Insurance Company's Motion for Summary Judgment (Phase One) (doc. #459) is granted.

IT IS FURTHER ORDERED that Defendant National Fire & Marine Insurance Company's request for attorneys' fees and costs pursuant to A.R.S. § 12-341.01(A) is denied.

IT IS FURTHER ORDERED that the Court expressly determines that there is no just reason for delay in the entry of final judgment in favor of Defendant National Fire & Marine Insurance Company on claims in this lawsuit arising out of its policies issued to Central Valley Specialities, Inc., policy numbers 71LP158280 and 72LP151863. The Court directs the Clerk to enter final judgment against Plaintiff American Family Mutual Insurance Co. and in favor of Defendant National Fire & Marine Insurance Company on Plaintiff American Family Mutual Insurance Co.'s claims in this lawsuit against Defendant National Fire & Marine Insurance Company arising from National Fire & Marine Insurance Company's commercial general liability policies issued to Central Valley Specialities, Inc., policy numbers 71LP158280 and 72LP151863.

DATED this 2nd day of September, 2009.

*Neil V. Wake*
Neil V. Wake
United States District Judge