**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Family Mutual Insurance Co., a Wisconsin corporation,<br><br>Plaintiff,<br><br>vs.<br><br>National Fire & Marine Insurance Co., a foreign corporation; et al,<br><br>Defendants. | No. CV07-2237-PHX-NVW<br><br>**ORDER**<br><br>[Not for Publication] |

Pending before the Court is Defendant Northland Insurance Company's Motion for Summary Judgment (Phase One) (doc. #472).

A party moving for summary judgment must "file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Any party opposing a motion for summary judgment must file a separate statement responding to each paragraph of the moving party's separate statement of facts and setting forth any additional facts that establish a genuine issue of material or otherwise preclude judgment in favor of the moving party. LRCiv 56.1(b). LRCiv 56.1(d) permits the moving party to file a "reply memorandum," but does not permit the moving party to file a separate statement responding to the nonmoving party's separate statement. Any evidentiary objections to the nonmoving party's separate statement may be included in the reply memorandum, but may not be

made in a separate statement. Therefore, the Court disregards and does not rely upon Defendant Northland Insurance Company's Response to Plaintiff's Separate Statement of Facts and Supplemental Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment (doc. #555).

**I.     Legal Standard for Summary Judgment**

The Court should grant summary judgment if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce evidence and persuade the Court there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law. *Id*. at 248. A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nature of this responsibility varies, however, depending on whether the moving party or the nonmoving party would bear the burden of proof at trial on the issues relevant to the summary judgment motion. If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of

persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*

In the context of summary judgment, the court presumes the nonmoving party's evidence is true and draws all inferences from the evidence in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). If the nonmoving party produces direct evidence of a genuine issue of fact, the court does not weigh such evidence against the moving party's conflicting evidence, but rather submits the issue to the trier of fact for resolution. *Id.*

However, each numbered paragraph of the moving party's separate statement of facts shall be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts. LRCiv 56.1(b).

## II. Facts Undisputed or Presumed True for Summary Judgment

Astragal, L.L.C. ("Astragal") was the developer of the project commonly known as Astragal Luxury Villas at Thompson Peak located in Maricopa County, Arizona ("Villas"). Astragal entered into a contract with George F. Tibsherany Development Company ("GFTDC") to serve as the general contractor for the Villas. GFTDC entered into a subcontract agreement with Willman & Sanetra Plastering ("Willman"), among others, to perform work at the Villas. The subcontract required Willman to maintain specifically described insurance coverage and to cause all its insurance companies to name GFTDC as an additional insured on all insurance policies required under the

subcontract. A Certificate of Liability Insurance dated April 19, 2002, was issued to GFTDC showing Willman was insured by Northland Insurance Company ("Northland").

Northland issued a commercial general liability policy to Willman, policy number RL000148, effective April 19, 2002, through April 19, 2003 ("Policy"). The Policy includes a Contractor's Blanket Additional Insured Endorsement. The Policy also includes the following language:

> **2. Duties In The Event of Occurrence, Offense, Claim Or Suit**
>
> **a.** You[1] must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
> **(1)** How, when and where the "occurrence" or offense took place;
> **(2)** The names and addresses of any injured persons and witnesses; and
> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> **b.** If a claim is made or "suit" is brought against any insured, you must:
> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
> **(2)** Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> **c.** You and any other involved insured must:
> **(1)** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";
> **(2)** Authorize us to obtain records and other information;
> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
> **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which the insurance may also apply.
>
> **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

---

[1] "You" in the Policy refers to Willman.

- 4 -

On October 19, 2004, Astragal Condominium Unit Owners Association ("Astragal HOA") filed a lawsuit against Astragal and GFTDC alleging numerous defects in the construction of the Villas ("HOA Lawsuit"). At all relevant times, GFTDC was insured under a commercial general liability policy issued by American Family Mutual Insurance Co. ("American Family"). American Family provided a defense to GFTDC in the HOA Lawsuit.

On August 11, 2005, GFTDC filed a third-party complaint in the HOA Lawsuit against Willman and other subcontractors to recover damages against the subcontractors to the extent they had failed to perform their scope of work in a workmanlike manner. Gust Rosenfeld represented GFTDC in the HOA Lawsuit. Matthew Bedwell, an attorney at Gust Rosenfeld, provided Gloria Zanella, a legal secretary for Gust Rosenfeld, with a draft letter to be mailed to each of the subcontractors named as third-party defendants to GFTDC's third-party complaint with a copy to each of the insurance companies indicated on certificates of liability insurance or other insurance documents for each subcontractor. In addition to the draft letter, Bedwell provided Zanella with a list of subcontractors named as third-party defendants and a binder of certificates of liability for the listed subcontractors. Zanella prepared a letter addressed to each of the subcontractors and listed the insurance companies indicated on the certificates of liability insurance for each particular subcontractor as recipients of a copy of the letter.

To obtain addresses for the insurance companies, Zanella researched the Arizona Department of Insurance website, the internet, and other sources. She then compiled the insurance companies' addresses on a document titled "List of Insurer Addresses." After obtaining the addresses, Zanella printed a copy of each letter for each of insurance companies indicated on the letter as a copy recipient. Zanella addressed envelopes for each insurance company that was copied on one of the letters and enclosed a copy of the signed letter and enclosures provided by Bedwell. After stuffing the envelopes and sealing them, Zanella placed the envelopes in the firm's outgoing mail baskets for postage

to be affixed by mail room employees and for delivery by Central Courier personnel to the United States Postal Service. She did not arrange for any of the letters to be mailed by certified or registered mail.

If Zanella was unable to locate an insurance company's address, a copy was mailed once the address was obtained. Zanella's affidavit states, "To my knowledge, every subcontractor and insurance company carbon copied on the letter was mailed a copy." Her affidavit does not state that she recalls, has personal knowledge of, or has records of printing a copy for Northland, addressing an envelope to Northland, or mailing a letter addressed to Northland.

A letter dated August 17, 2005, was sent to Rick Senetra, Willman, that demanded a defense and indemnity from Willman as well as insurance coverage as an additional insured under Willman's insurance policy ("Willman Tender Letter"). The letter states that Willman was "required to name GFTDC as an additional insured under the policies issued by Northland Insurance, Western Agricultural, National Union Fire Insurance Company, Genesis Indemnity, Hartford Insurance Company, AIG, Kemper Indemnity Insurance, Liberty Mutual and Great States Insurance Company." The Willman Tender Letter also states:

> Accordingly, please immediately place your insurance carrier on notice of this claim and further put them on notice that GFTDC will be looking to them directly as an additional insured for coverage under the policy in regard to the allegations being presented by the condominium unit owners association. By copy of this correspondence to your agent and insurance carrier, we are formally placing them on notice of GFTDC's demand for defense and coverage under the terms and conditions of the policy of insurance noted above and noted in the attached certificate. GFTDC formally demands that your insurance carrier respond to this request for defense and coverage within 20 days. In addition, GFTDC intends to look to you and your insurance carrier for the payment of all expenses and costs associated with this defense as it relates to the allegations from the condominium unit owners association. Please confirm within 20 days of the date of this correspondence your agreement to defend and indemnity [sic] GFTDC completely in regard to any and all allegations being presented.

The Willman Tender Letter indicates a copy was mailed to each of the following: Northland Insurance, Western Agricultural, National Union Fire Ins. Co., Genesis

1  Indemnity, Hartford Insurance Co., AIG, Kemper Indemnity Ins., Liberty Mutual, and
2  Great States Ins. Co.

3  However, Northland denies receipt of the Willman Tender Letter. Scott Stanek, a
4  Managing Director for Northland, personally reviewed Northland's claims file regarding
5  the HOA Lawsuit and was unable to locate a copy of the Willman Tender Letter or any
6  other letter or communication tendering the defense or indemnification of GFTDC to
7  Northland. An electronic log note from the Northland file dated April 17, 2006, states
8  that no tender had been received from the project developer. The attorneys who
9  represented Willman in the HOA Lawsuit did not receive a copy of the Willman Tender
10 Letter.

11 American Family is seeking to recover defense costs and indemnification from
12 Northland under the theory American Family and Northland both insured GFTDC.
13 American Family's Third Amended Complaint seeks (1) indemnification in connection
14 with the Astragal HOA property damage claims, (2) contribution for the cost of the
15 defense, and (3) equitable contribution for breach of duties by failing to participate in the
16 defense of GFTDC.

17 **III.   Analysis**

18 Under the doctrine of equitable contribution, an insurer who has paid a claim may
19 seek contribution directly from other carriers that are liable for the same loss. *W.*
20 *Agricultural Ins. Co. v. Indus. Indem. Ins. Co.*, 838 P.2d 1353, 1355 (Ariz. App. 1992).
21 One insurer may be required to contribute to another insurer's payment of a claim if the
22 policies cover (1) the same parties, (2) in the same interest, (3) in the same property, and
23 (4) against the same casualty. *Id.* The doctrine is appropriate where two insurers have
24 agreed to indemnify the same party because it avoids the loss claimant making an
25 arbitrary choice as to which insurer should pay and it does not give one indemnitor an
26 incentive to avoid paying a just claim to its insured hoping the other indemnitor will pay.
27 *Id.* at 1356. However, if a party to an insurance policy breaches it, the other party is no
28

longer obligated to perform its contractual obligations under the policy. *Holt v. Utica Mut. Ins. Co.*, 759 P.2d 623, 628 (Ariz. 1988).

### A. GFTDC Failed to Properly Tender Its Demand for Defense and Indemnification to Northland.

Northland contends that American Family may not obtain equitable contribution from Northland because GFTDC failed to tender its defense and to demand indemnification. American Family contends that genuine issues of material fact regarding GFTDC's tender of defense preclude summary judgment.

Before an insurer's duty to defend may be found, it must be shown that the insurer received sufficient notice that the insured was tendering the defense to it. *Purvis v. Hartford Accident & Indem. Co.*, 877 P.2d 827, 830 (Ariz. App. 1994). A tender of defense, "whether written or oral, must contain full and fair information concerning the pending action and an unequivocal, certain and explicit demand to undertake the defense thereof, with an offer to surrender control of the action to the indemnitor at least as to that portion of the claim for which the indemnitee seeks ultimately to hold the indemnitor liable." *Litton Sys., Inc. v. Shaw's Sales & Serv., Ltd.*, 579 P.2d 48, 52 (Ariz. App. 1978); *accord Purvis*, 877 P.2d at 830. "What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Purvis*, 877 P.2d at 830 (quoting *Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir. 1985)).

Arizona law recognizes a "mail delivery rule." *Lee v. Arizona*, 182 P.3d 1169, 1171, ¶ 8 (Ariz. 2008). Under this common law rule:

> [T]here is a presumption that a "letter properly addressed, stamped and deposited in the United States mail will reach the addressee." That is, proof of the fact of mailing will, absent any contrary evidence, establish that delivery occurred. If, however, the addressee denies receipt, the presumption of delivery disappears, but the fact of mailing still has evidentiary force. The denial of receipt creates an issue of fact that the factfinder must resolve to determine if delivery actually occurred.

*Id.* (citations omitted). *See Anderson v. United States*, 966 F.2d 487, 491-92 (9th Cir. 1992) (mailbox rule applied where plaintiff's contention she had mailed tax return was

- 8 -

1  supported by her notarized statement that she had mailed the return, her sworn testimony
2  that she had seen the postal clerk postmark her return and place the envelope in the
3  mailing pouch, and the affidavit of a witness who accompanied plaintiff to the post office,
4  waited in the car, and saw plaintiff return to the car from the post office without the
5  envelope that had contained the tax return).

6　　　　American Family urges the Court to presume, under the common law mailbox rule, that the Willman Tender Letter was received by Northland. The "mail delivery rule," however, requires "proof of the fact of mailing." *See Lee*, 182 P.3d at 1171, ¶ 8. The evidence submitted by American Family shows only that GFTDC's counsel prepared tender letters to numerous subcontractors, intended to mail copies to all of the subcontractors' insurers, did not mail all of the letters and copies at the same time, placed some envelopes with letters in the firm's outgoing mail baskets, and did not send any of the letters or copies by registered or certified mail. It does not show that anyone has personal knowledge of, or records of, printing a copy for Northland, addressing an envelope to Northland, or mailing a letter addressed to Northland. American Family has not submitted proof that the Willman Tender Letter was actually mailed to Northland by GFTDC or its counsel. There is, therefore, no basis for applying the "mail delivery rule" or presuming that Northland received the Willman Tender Letter.

　　　　Northland has produced evidence negating an essential element of American Family's case and shown that American Family does not have enough evidence to carry its ultimate burden of persuasion at trial. *See Nissan Fire*, 210 F.3d at 1105-06. American Family has not submitted direct evidence of a genuine issue of fact regarding GFTDC's failure to tender its defense and demand for indemnification to Northland. *See Eisenberg*, 815 F.2d at 1289. GFTDC's failure to tender its defense and demand for indemnity to Northland relieves Northland of its obligations to GFTDC under the Policy.

B.  **GFTDC Breached Its Contractual Obligation to Immediately Send Northland Copies of Any Demands, Notices, Summonses or Legal Papers Regarding the HOA Lawsuit.**

Northland contends that GFTDC breached Section IV, paragraph 2(c)(1) of the Policy, which required GFTDC to immediately send Northland "copies of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit'" by failing to send Northland a copy of the HOA Lawsuit complaint or summons served on GFTDC on October 25, 2004, or a demand for defense. Even if GFTDC had mailed the Willman Tender Letter to Northland, Northland contends GFTDC should have attempted further contact with Northland when it did not receive a response within 20 days as demanded by the letter to ensure that Northland was notified as required by the Policy. American Family contends that it would be inequitable to enforce the Policy's notice requirements because Northland did not deliver a copy of the Policy to Northland and therefore GFTDC did not have notice of the notice requirements.

An insured's failure to give notice does not relieve an insurer of its contractual liability unless it can show that it has been prejudiced thereby. *Lindus v. N. Ins.*, 438 P.2d 311, 315 (Ariz. 1968); *Zuckerman v. Transamerica Ins. Co.*, 650 P.2d 441, 445, 447 (Ariz. 1982); *Liberty Mut. Fire Ins. Co. v. Mandile*, 963 P.2d 295, 302 (Ariz. App. 1997). Nonetheless, American Family does not dispute that Northland was deprived of opportunity to investigate the claim, participate in GFTDC's defense, control the litigation, and contribute to the settlement agreement reached in the HOA Lawsuit. *See Motiva Enterprises, LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 386 (5th Cir. 2006) (breaching a consent-to-settle provision prejudiced a primary insurer as a matter of law where the insurer was not consulted about the settlement, the settlement was not tendered to it, and the insurer had no opportunity to participate in or consent to the ultimate settlement decision).

Relying on *Zuckerman*, American Family contends that "it would be inequitable and contrary to GFTDC's reasonable expectations to enforce a boilerplate policy conditions [sic] of which it had no notice" because Northland did not provide GFTDC a

copy of the Policy. In *Zuckerman*, an insurance policy for fire loss contained a clause requiring that any action for recovery on a claim insured under the policy must be commenced within twelve months after the loss, which was significantly shorter than the Arizona limitations period for an action on a written contract. 650 P.2d at 442-43, 444. Within the one-year period, the insured consulted counsel and also negotiated directly with the insurer's adjuster. Although tentative settlement was reached, the agreement fell apart, and the insured filed an action against the insurer three months after the expiration of the one-year policy period. *Id.* at 443. The Arizona Supreme Court held the insurer was estopped to enforce the adhesive clause because it did "no more than provide a trap for the unwary." *Id.* at 448-49. The court further found the insurer was not prejudiced by the fact that the suit was brought more than one year after the loss occurred because there never was any dispute regarding the loss, its cause, the existence of coverage for the loss, or the amount of damage. *Id.*

Here, the Policy's requirements that insureds immediately send Northland copies of legal papers received in connection with lawsuits against the insureds is not "a trap for the unwary." GFTDC's subcontract with Willman required Willman to obtain insurance that named GFTDC as an additional insured. A Certificate of Liability Insurance was issued to GFTDC showing Willman was insured by Northland. If GFTDC wanted to read the specific language of the Policy, it could have requested that Northland send it a copy. Requiring insureds to send Northland copies of legal papers received in connection with lawsuits against the insureds for which they want coverage is not outside of reasonable expectations and is identical to the requirement in other subcontractors' policies covering GFTDC as an additional insured. Northland does not contend that GFTDC failed to send specific documents or comply with specific procedures or timelines—GFTDC did not send Northland *anything* it received in connection with the HOA Lawsuit.

Moreover, the Policy included a blanket additional insured endorsement. If GFTDC was covered as an additional insured under the Policy as a result of entering into

- 11 -

the subcontract with Willman, Northland likely would not have received notice of that event or any need to send GFTDC a copy of the Policy.

GFTDC's counsel prepared a letter to Willman that identified Northland as a copy recipient. American Family cannot claim that GFTDC did not know that the Policy required it to send Northland papers received in connection with the HOA Lawsuit or was surprised by such a requirement. It is not inequitable to find GFTDC breached Section IV, paragraph 2(c)(1) of the Policy, which required GFTDC to send Northland documents related to the HOA Lawsuit.

GFTDC's breach of the Policy's notice requirements relieves Northland of its obligations to GFTDC under the Policy.

**IV.    Attorneys' Fees**

Northland seeks award of attorneys' fees under A.R.S. § 12-341.01(A). Under the statute, the Court may exercise its discretion to award attorneys' fees to the successful party in any contested action arising out of a contract upon consideration of multiple factors. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). Because Northland has not addressed any of the factors the Court should consider in determining whether to exercise its discretion under the statute and has not presented in any argument in favor of exercising such discretion, the Court will deny Northland's request for attorneys' fees.

**V.    Rule 54(b) Certification**

There is no just reason for delay in entry of final judgment in favor of Defendant Northland Insurance Company. Granting Northland summary judgment resolves all claims in this action against this Defendant. Further, the issues decided in this Order are discrete and do not overlap with issues to be decided later in this case. Moreover, an immediate appeal of this Order would not threaten duplication of judicial work through repetitive appeals on related issues or transactions and may contribute to appellate economy by permitting review of this Order in conjunction with review of other Orders issued today in this action on similar issues. For these reasons, pursuant to Fed. R. Civ.

P. 54(b), the Court directs entry of final judgment against Plaintiff American Family Mutual Insurance Co. and in favor of Defendant Northland Insurance Company.

IT IS THEREFORE ORDERED that Defendant Northland Insurance Company's Motion for Summary Judgment (Phase One) (doc. #472) is granted.

IT IS FURTHER ORDERED that Defendant Northland Insurance Company's request for attorneys' fees is denied.

IT IS FURTHER ORDERED that the Court expressly determines that there is no just reason for delay in the entry of final judgment in favor of Defendant Northland Insurance Company. The Court directs the Clerk to enter final judgment against Plaintiff American Family Mutual Insurance Co. and in favor of Defendant Northland Insurance Company.

DATED this 2nd day of September, 2009.

_____
Neil V. Wake
United States District Judge