**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Family Mutual Insurance Co., a Wisconsin corporation,<br><br>Plaintiff,<br><br>vs.<br><br>National Fire & Marine Insurance Co., a foreign corporation; et al,<br><br>Defendants. | No. CV07-2237-PHX-NVW<br><br>**ORDER**<br><br>[Not for Publication] |

Pending before the Court is Defendant St. Paul Guardian Insurance Company's Motion for Summary Judgment (Phase One) (doc. #470).

A party moving for summary judgment must "file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Any party opposing a motion for summary judgment must file a separate statement responding to each paragraph of the moving party's separate statement of facts and setting forth any additional facts that establish a genuine issue of material or otherwise preclude judgment in favor of the moving party. LRCiv 56.1(b). LRCiv 56.1(d) permits the moving party to file a "reply memorandum," but does not permit the moving party to file a separate statement responding to the nonmoving party's separate statement. Any evidentiary objections to the nonmoving party's separate statement may be included in the reply memorandum, but may not be

made in a separate statement. Therefore, the Court disregards and does not rely upon Defendant St. Paul Guardian Insurance Company's Response to Plaintiff's Separate Statement of Facts and Supplemental Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment (doc. #557).

## I. Legal Standard for Summary Judgment

The Court should grant summary judgment if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce evidence and persuade the Court there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law. *Id.* at 248. A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nature of this responsibility varies, however, depending on whether the moving party or the nonmoving party would bear the burden of proof at trial on the issues relevant to the summary judgment motion. If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of

persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*

In the context of summary judgment, the court presumes the nonmoving party's evidence is true and draws all inferences from the evidence in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). If the nonmoving party produces direct evidence of a genuine issue of fact, the court does not weigh such evidence against the moving party's conflicting evidence, but rather submits the issue to the trier of fact for resolution. *Id.*

However, each numbered paragraph of the moving party's separate statement of facts shall be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts. LRCiv 56.1(b).

**II.     Facts Undisputed or Presumed True for Summary Judgment**

Astragal, L.L.C. ("Astragal") was the developer of the project commonly known as Astragal Luxury Villas at Thompson Peak located in Maricopa County, Arizona ("Villas"). Astragal entered into a contract with George F. Tibsherany Development Company ("GFTDC") to serve as the general contractor for the Villas. GFTDC entered into a subcontract agreement with Universal Underground, Inc. ("Universal"), among others, to perform work at the Villas. The subcontract required Universal to maintain specifically described insurance coverage and to cause all its insurance companies to name GFTDC as an additional insured on all insurance policies required under the subcontract.

St. Paul Guardian Insurance Group ("St. Paul Guardian") issued six consecutive commercial general liability policies to Universal: policy number KK07800139, effective November 19, 1999, through November 19, 2000; policy number KK07800293, effective November 19, 2000, through November 19, 2001; policy number KK07800451, effective November 19, 2001, through November 19, 2002; policy number KK07800032, effective November 19, 2002, through November 19, 2003; policy number KK07800182, effective November 19, 2003, through November 19, 2004; policy number KK07800324, effective November 19, 2004, through November 19, 2005 (collectively, "Policies"). The Policies contain the following relevant language:

> Our duty to defend an indemnitee, or pay indemnitee defense expenses incurred by us, under the contract liability indemnitee defense coverage ends when the indemnitee fails to comply with any of our indemnitee defense cooperation and notice requirements. It also ends when we have used up the limits of coverage that apply with the payment of:
>
> - judgments
> - settlements
> - medical expenses; or
> - indemnitee defense expenses assumed under contract
>
> *Indemnitee defense cooperation and notice requirements* means the following requirements which must be fulfilled for us to continue defending an indemnitee against a claim or suit under this agreement:
>
> - The indemnitee must cooperate with us in the investigation, settlement, or defense of the claim or suit.
> - The indemnitee must provide us with a copy of any demand, notice, summons, or legal paper received in connection with the claim or suit as soon as possible after it is received.
> - The indemnitee must give notice of the claim or suit to any other insurer which provides coverage that's applicable to the claim or suit and available to the indemnitee.
> - The indemnitee must help us coordinate the application of other insurance that's applicable to the claim or suit and available to the indemnitee.

On October 19, 2004, Astragal Condominium Unit Owners Association ("Astragal HOA") filed a lawsuit against Astragal and GFTDC alleging numerous defects in the construction of the Villas ("HOA Lawsuit"). At all relevant times, GFTDC was insured under a commercial general liability policy issued by American Family Mutual Insurance

Co. ("American Family"). American Family provided a defense to GFTDC in the HOA Lawsuit.

On August 11, 2005, GFTDC filed a third-party complaint in the HOA Lawsuit against Universal and other subcontractors to recover damages against the subcontractors to the extent they had failed to perform their scope of work in a workmanlike manner. Gust Rosenfeld represented GFTDC in the HOA Lawsuit.

On August 17, 2005, GFTDC's attorney Matthew Bedwell sent a letter to Mike Hintze, Universal, tendering GFTDC's defense to Universal and its insurers with copies to "St. Paul Guardian Ins.," "St.Paul- Construction," "St. Paul Fidelity & Guaranty," "St. Paul Fire & Marine," and "TIG Insurance." The letter stated, "In their complaint the plaintiffs have alleged defects and resultant damage within the scope of the work performed by Universal Underground," and "Universal Underground agreed to provide all materials and labor to complete 100% of the sewer water and storm drain work at the Astragal Project." The letter further stated, "Enclosed is a copy of the Preliminary Observation Matrix provided by the lawyers for the [Astragal HOA] that specifically references your work at sections 12 and 13."

The August 17, 2005 letter from Bedwell to Hintze further stated, "pursuant to the terms and conditions of the contract between you and GFTDC, you are required to name GFTDC as an additional insured under the policies issued by St. Paul Guardian Insurance, St. Paul- Construction, St. Paul Fidelity & Guaranty, St. Paul Fire & Marine and TIG Insurance." The letter requested that Universal notify its insurance carrier of this claim and "put them on notice that GFTDC will be looking to them directly as an additional insured for coverage under the policy in regard to the allegations being presented by the condominium unit owners association."

On September 7, 2005, St. Paul Guardian adjuster Pamela Colouris responded to GFTDC's tender letter. Her September 7, 2005 letter to Bedwell acknowledged receipt of GFTDC's tender letter and stated that St. Paul Guardian "is not in a position to either accept or reject your tender on behalf of [GFTDC] as an additional insured." Her letter

further stated that St. Paul Guardian was conducting a coverage investigation and requested the following items to determine if St. Paul Guardian had an obligation to GFTDC:

1. A notice of completion date.

2. Information regarding the existence of any Wrap policy covering this project.

3. A complete copy of the contract between Universal Underground and [GFTDC].

4. Any additional insured endorsements in favor of [GFTDC].

5. A complete copy of the preliminary defect list. Although your letter indicates that work performed by Universal Underground is referenced in items 12 and 13, we find that item 12 is not included in the documentation provided, and item 13 address electrical issues.

Colouris's letter said she looked forward to receiving the requested information "in the very near future." Colouris did not receive a response to her September 7, 2005 letter.[1]

On November 3, 2005, Colouris sent another letter to Bedwell that referenced her September 7, 2005 letter and repeated her request for the five items of information and documentation that St. Paul Guardian needed to investigate potential coverage for GFTDC's claim as an additional insured under St. Paul Guardian's policy issued to Universal. Colouris's letter said she looked forward to receiving the requested information "within the next 60 days." Colouris did not receive a response to her November 3, 2005 letter.

On January 6, 2006, Colouris sent another letter to Bedwell that referenced her September 7, 2005 and November 3, 2005 letters and repeated her request for the five items of information and documentation that St. Paul Guardian needed to investigate

---

[1] As an exhibit to the Affidavit of Jeanine M. O'Boyle, American Family has submitted a copy of a letter dated September 13, 2005, addressed to Colouris from Wendy Weigand, a Gust Rosenfeld attorney, which states it has enclosed copies of certain items Colouris requested and "[a]ny remaining information you have requested will be provided to you under separate cover." However, O'Boyle's affidavit does not indicate that she has personal knowledge that Weigand sent this letter to Colouris, and there is no supporting affidavit from Weigand.

potential coverage for GFTDC's claim. Colouris's letter said she looked forward to receiving the requested information "within the next 60 days." Colouris did not receive a response to her January 6, 2006 letter.

On March 15, 2006, Colouris sent another letter to Bedwell that referenced her September 7, 2005, November 3, 2005, and January 6, 2006 letters and repeated her request for the five items of information and documentation that St. Paul Guardian needed to investigate potential coverage for GFTDC's claim. Colouris's letter said she looked forward to receiving the requested information and, in bold print, "**In the absence of a response within the next 60 days we will assume your tender has been withdrawn**."

Colouris received a letter dated May 12, 2006, from Jeanine M. O'Boyle, paralegal for Gust Rosenfeld, that said:

> This letter is in response to yours dated March 15, 2006. I am in the process of gathering the documents you requested; however, the documents will not be provided until Tuesday or Wednesday of next week. As such, please do not assume that our tender has been withdrawn.

On May 15, 2006, GFTDC's counsel called Colouris and again stated the requested documentation would be forwarded within the next couple of days.[2] Colouris never received any of the requested documents from GFTDC or its attorneys.

On July 6, 2006, Colouris sent her fifth letter to Bedwell. The letter referenced her multiple previous letters and stated that although on May 15, 2006, Bedwell had told her the requested documentation would be forwarded within a few days, she had not received anything. Colouris's letter said she looked forward to receiving the requested information and, in bold print, "**In the absence of a response within the next 60 days we will assume your tender has been withdrawn**." Colouris never received a response to her July 6, 2006 letter.

---

[2] O'Boyle's affidavit states that she reviewed the time entries for all attorneys and paralegals who worked on the HOA Lawsuit and found no entries for May 15, 2006, indicating anyone had a conversation with Colouris, but American Family did not submit an affidavit from Bedwell stating that he did not call Colouris.

- 7 -

After Colouris mailed her July 6, 2006 letter, she did not receive any further communications from GFTDC or American Family. Colouris did not receive information from GFTDC that it had entered settlement negotiations with the Astragal HOA or information regarding its settlement negotiations with Universal.

In July 2006, GFTDC, the Astragal HOA, and Universal reached a mutual settlement. A fully executed copy of the Universal Underground Release and Settlement Agreement between Universal and GFTDC is dated March 12, 2007. A settlement check from The Travelers Indemnity Company in the amount of $3,000.00 payable to the Trust Account of Gust Rosenfeld PLC is dated February 6, 2007.

In support of its response to St. Paul Guardian's motion for summary judgment, American Family has submitted an affidavit by O'Boyle, Gust Rosenfeld's paralegal.[3] The affidavit states that on September 27, 2005, O'Boyle received an email from Bedwell instructing her to "call the adjuster at St. Paul that insures Universal Underground and tell her that we cannot dismiss Universal Underground from the lawsuit because Universal Underground performed trenching and other work and that many drainage issues have been alleged in the first party complaint," "the lady's name is on the letter they sent," and "he believed the adjuster's name is Laura Hall." The affidavit further states that on September 27 or 28, 2005, O'Boyle left a voicemail message for Colouris instead of Hall because she "found a letter from St. Paul relating to Universal Underground with Ms. Colouris's name on it." O'Boyle's voicemail message stated "that we are unable to dismiss Universal Underground from the lawsuit and that we would like an answer to our third-party complaint from Universal Underground no later than October 24, 2006 [sic]." The affidavit also states that O'Boyle "prepared a letter to Pamela Colouris, Senior Technical Specialist at St. Paul Guardian, confirming the message I left for her earlier that

---

[3]O'Boyle's affidavit includes many statements for which there is no assertion that the statements are based on her personal knowledge and no basis from which to infer she has personal knowledge. Such statements are not presumed to be true for the purpose of summary judgment.

day" and "[o]n September 29, 2005, I contacted Laura Hall at St. Paul Insurance Company to discuss an extension of time for Universal Underground to file its answer to the third-party complaint." The affidavit states that O'Boyle "had another telephone conversation with Laura Hall regarding our refusal to dismiss Universal Underground from the lawsuit and an extension of time for Universal Underground to file its answer to the third party-complaint." The affidavit states that after October 31, 2005, when Paul Kular of the law firm of Potts & Associates appeared on Universal's behalf, "we communicated directly with Mr. Kular concerning the claims against Universal Underground."

O'Boyle searched Gust Rosenfeld's correspondence backers, the entire file, and billing records and could find no copy of, or record of receiving, Colouris's November 3, 2005 and January 6, 2006 letters. She did find billing records indicating that Bedwell received Colouris's July 6, 2006 letter, "but apparently no response was sent."

O'Boyle communicated with Kular in January 2006 regarding dismissal of Universal from the HOA Lawsuit. In January through May 2007 O'Boyle exchanged emails with Kular regarding a Release and Settlement Agreement with Universal and a Stipulation for Dismissal with Prejudice and proposed form of Order. Astragal, GFTDC, and Universal executed a Release and Settlement Agreement dated March 12, 2007. In her affidavit, O'Boyle states: "By communicating with Paul Kular, I was confident that I was communicating directly with a representative of Universal Underground's insurance carrier because Potts and Associates' letterhead clearly states: 'Staff Counsel for St. Paul Travelers Companies.'" O'Boyle does not state that she believed by communicating with Kular as Universal's insurer she was communicating with St. Paul Guardian as the provider of additional insured coverage for GFTDC.

In this lawsuit, American Family seeks: (1) a declaration that St. Paul Guardian and American Family owe a primary and simultaneous duty to defend and indemnify GFTDC for all of the claims alleged in the HOA Lawsuit; (2) a declaration that St. Paul Guardian and American Family must share in the cost of defending GFTDC and

participate in payment of any settlement or verdict reached in connection with the HOA Lawsuit; (3) a determination of the pro rata share of St. Paul Guardian's and American Family's contributions to the cost of defending and indemnifying GFTDC in the HOA Lawsuit; (4) an award of damages against St. Paul Guardian for its pro rata share of defense costs incurred by American Family in connection with its defense of GFTDC in the HOA Lawsuit; (5) an award of damages against St. Paul Guardian for its pro rata share of indemnity payments made by American Family on behalf of GFTDC in the HOA Lawsuit; and (6) attorneys' fees and costs.

American Family's complaint notably does not seek any equitable contribution or other relief against St. Paul Guardian with respect to St. Paul Guardian's duties to defend or indemnify its principal insured Universal Underground. St. Paul Guardian did defend Universal. Rather, the complaint only seeks relief with respect to St. Paul Guardian's duties to defend or indemnify GFTDC as an additional insured on the same policy.

### III. Analysis

Under the doctrine of equitable contribution, an insurer who has paid a claim may seek contribution directly from other carriers that are liable for the same loss. *W. Agricultural Ins. Co. v. Indus. Indem. Ins. Co.*, 838 P.2d 1353, 1355 (Ariz. App. 1992). One insurer may be required to contribute to another insurer's payment of a claim if the policies cover (1) the same parties, (2) in the same interest, (3) in the same property, and (4) against the same casualty. *Id.* The doctrine is appropriate where two insurers have agreed to indemnify the same party because it avoids the loss claimant making an arbitrary choice as to which insurer should pay and it does not give one indemnitor an incentive to avoid paying a just claim to its insured hoping the other indemnitor will pay. *Id.* at 1356. However, if a party to an insurance policy breaches it, the other party is no longer obligated to perform its contractual obligations under the policy. *Holt v. Utica Mut. Ins. Co.*, 759 P.2d 623, 628 (Ariz. 1988).

St. Paul Guardian contends that American Family may not obtain equitable contribution from St. Paul Guardian because (a) GFTDC failed to provide sufficient

information with its tender of defense and demand for indemnification and therefore did not properly tender defense and (b) GFTDC's breach of the Policies' notice and cooperation conditions relieves St. Paul Guardian of its obligations to GFTDC under the Policies. St. Paul Guardian's motion is appropriate during Phase One of this case, which focuses on whether GFTDC is an additional insured under the defendants' policies and whether GFTDC properly tendered its defense to the defendants.

### A. GFTDC Failed to Properly Tender Its Demand for Defense and Indemnification to St. Paul Guardian.

Before an insurer's duty to defend may be found, it must be shown that the insurer received sufficient notice that the insured was tendering the defense to it. *Purvis v. Hartford Accident & Indem. Co.*, 877 P.2d 827, 830 (Ariz. App. 1994). A tender of defense, "whether written or oral, must contain full and fair information concerning the pending action and an unequivocal, certain and explicit demand to undertake the defense thereof, with an offer to surrender control of the action to the indemnitor at least as to that portion of the claim for which the indemnitee seeks ultimately to hold the indemnitor liable." *Litton Sys., Inc. v. Shaw's Sales & Serv., Ltd.*, 579 P.2d 48, 52 (Ariz. App. 1978); *accord Purvis*, 877 P.2d at 830. "What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Purvis*, 877 P.2d at 830 (quoting *Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir. 1985)).

St. Paul Guardian contends that GFTDC did not provide sufficient information for St. Paul Guardian to be able to know "that the suit is potentially within the policy's coverage" and did not tender "an unequivocal, certain and explicit demand to undertake the defense" of GFTDC. St. Paul Guardian does not dispute that it received Bedwell's August 17, 2005 tender letter. American Family does not dispute that on September 7, 2005, St. Paul Guardian adjuster Colouris responded to Bedwell's August 17, 2005 letter and that Colouris requested specific documents and information to determine whether GFTDC was an additional insured under the Policies. American Family does not dispute

1 that Gust Rosenfeld received Colouris's September 7, 2005 letter. Colouris sent four
2 more letters requesting information, two of which were undisputably received by Gust
3 Rosenfeld. Colouris's March 15, 2006 letter stated in bold print: "In the absence of a
4 response within the next 60 days we will assume your tender has been withdrawn." On
5 May 12, 2006, O'Boyle responded by acknowledging receipt of Colouris's March 15,
6 2006 letter, stating that she was in the process of gathering the documents Colouris
7 requested, and essentially promising to send them within a week. American Family
8 concedes that Bedwell received Colouris's July 6, 2006 letter, which states that she had
9 not received any of the requested and promised documentation. The July 6, 2006 letter
10 states in bold print, again: "In the absence of a response within the next 60 days we will
11 assume your tender has been withdrawn."

12 In response, American Family first contends that Weigand mailed Colouris
13 sufficient information on September 13, 2005. American Family, however, fails to
14 support this contention with admissible evidence. There is no affidavit from Weigand in
15 the record. O'Boyle's affidavit does not state that she has personal knowledge that
16 Weigand prepared the letter, the letter was deposited in a U.S. Postal Service mailbox, or
17 enclosures were actually included as represented in the letter. O'Boyle's affidavit does
18 not state how and where she found a copy of this letter. Even if the September 13, 2005
19 letter were mailed to Colouris, the letter does not explain how the enclosures respond to
20 Colouris's five requests. It does not explain how Colouris could determine where in the
21 HOA Lawsuit document depository she would find the responsive documents when the
22 Index of Documents only describes documents by box number and a range of
23 construction phase numbers. Nor does it acknowledge the fact that Colouris and the
24 document depository were located in different states. Finally, the letter states that "any
25 remaining information you have requested will be provided to you under separate cover,"
26 but American Family concedes that no additional information was sent to Colouris under
27 separate cover then or ever. The only subsequent communication Colouris received from
28 GFTDC or its counsel was O'Boyle's May 12, 2006 letter stating she was "in the process

of gathering the documents you requested." American Family does not dispute that Gust Rosenfeld received at least two letters from Colouris reasserting her request for information after September 13, 2005, the date on which Gust Rosenfeld purportedly sent Colouris some of the requested information.

Second, American Family contends GFTDC provided St. Paul Guardian with sufficient information because Kular, the attorney provided by St. Paul Guardian to represent Universal, had access to all of the information Colouris requested. But it bears repetition that this action is not for equitable contribution or any other relief arising out of St. Paul Guardian's defense of Universal. American Family is the master of its own complaint, and it sought relief only as to St. Paul Guardian's failure to defend and indemnify GFTDC as an additional insured on the policy. American Family does not contend, nor is there any basis in the record for inferring, that Colouris actually received the requested information through Kular, which he received as insurance-appointed counsel to defend Universal. Nor is it suggested that GFTDC's counsel informed Colouris that she could obtain the information from Kular. American Family contends instead that Kular's knowledge of the documents he received should be imputed constructively to St. Paul Guardian. It cites no authority to support its argument.

American Family had the most explicit information, often repeated, regarding who at St. Paul Guardian had the authority and needed the information to respond to the demand for a defense of GFTDC. It was Colouris. It is of no consequence that other people carrying out other duties for St. Paul Guardian, but having no duty to forward that information to Colouris, had the information that Colouris needed but never informed Colouris about it. American Family's theory of constructive disclosure to Colouris without actual knowledge would reduce the tender and cooperation requirements of the policy to a fiction. It would defeat the business purpose of the requirement that the insured supply the insurer with the information the insurer needs to make decisions.

American Family's pleading alleges St. Paul Guardian is liable for "its share of any judgment or settlement entered against GFTDC" in the HOA Lawsuit. It does not

- 13 -

limit its claims against St. Paul Guardian to those arising out of Universal's actions. GFTDC's counsel communicated extensively with the attorney representing Universal about claims against Universal and release and settlement of those claims. GFTDC's counsel was aware that St. Paul Guardian separately sought information related to its additional insured coverage for GFTDC. O'Boyle, on behalf of Gust Rosenfeld and GFTDC, told Colouris she was in the process of gathering the requested documents, but never sent them even after another written request from Colouris. Thus, there is neither legal authority nor factual basis for finding that St. Paul Guardian constructively received information regarding its additional insured coverage for GFTDC sufficient for a proper tender of defense.

GFTDC did not provide St. Paul Guardian "full and fair information concerning the pending action and an unequivocal, certain and explicit demand to undertake the defense thereof," as required for proper tender. *See Purvis*, 877 P.2d at 830. St. Paul Guardian has produced evidence negating an essential element of American Family's case and has shown that American Family does not have enough evidence to carry its ultimate burden of persuasion at trial. *See Nissan Fire*, 210 F.3d at 1105-06. American Family has not submitted direct evidence of a genuine issue of fact regarding GFTDC's failure to properly tender its defense and demand for indemnification to St. Paul Guardian. *See Eisenberg*, 815 F.2d at 1289. GFTDC's failure to properly tender its demand for defense and indemnity relieves St. Paul Guardian of its obligations to GFTDC under the Policies.

**B.     GFTDC's Breached Its Contractual Obligations Under the St. Paul Guardian Policies' "Indemnitee Defense Cooperation and Notice Requirements."**

If a party to an insurance policy breaches it, the other party is no longer obligated to perform its contractual obligations under the policy. *Holt*, 759 P.2d at 628. The Policies expressly required GFTDC to cooperate with St. Paul Guardian in the investigation, settlement, or defense of the claim or suit; provide St. Paul Guardian with a copy of any demand, notice, summons, or legal paper received in connection with the claim or suit as soon as possible after it is received; and help St. Paul Guardian coordinate

- 14 -

the application of other insurance that is applicable to the claim or suit and available to GFTDC. GFTDC did not satisfy those requirements. This is shown from the same facts establishing the insufficiency of GFTDC's tender.

An insured's failure to give notice does not relieve an insurer of its contractual liability unless it can show that it has been prejudiced thereby. *Lindus v. N. Ins.*, 438 P.2d 311, 315 (Ariz. 1968); *Zuckerman v. Transamerica Ins. Co.*, 650 P.2d 441, 445, 447 (Ariz. 1982); *Liberty Mut. Fire Ins. Co. v. Mandile*, 963 P.2d 295, 302 (Ariz. App. 1997). Based on the undisputed facts, St. Paul Guardian was deprived of opportunity to investigate the claim, participate in GFTDC's defense, control the litigation, and contribute to the settlement agreement reached in the HOA Lawsuit. *See Motiva Enterprises, LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 386 (5th Cir. 2006) (breaching a consent-to-settle provision prejudiced a primary insurer as a matter of law where the insurer was not consulted about the settlement, the settlement was not tendered to it, and the insurer had no opportunity to participate in or consent to the ultimate settlement decision).

Relying on *Zuckerman*, American Family contends that "it would be inequitable and contrary to GFTDC's reasonable expectations to enforce a boilerplate policy conditions [sic] of which it had no notice" because St. Paul Guardian did not provide GFTDC a copy of the Policies. In *Zuckerman*, an insurance policy for fire loss contained a clause requiring that any action for recovery on a claim insured under the policy must be commenced within twelve months after the loss, which was significantly shorter than the Arizona limitations period for an action on a written contract. 650 P.2d at 442-43, 444. Within the one-year period, the insured consulted counsel and also negotiated directly with the insurer's adjuster. Although tentative settlement was reached, the agreement fell apart, and the insured filed an action against the insurer three months after the expiration of the one-year policy period. *Id.* at 443. The Arizona Supreme Court held the insurer was estopped to enforce the adhesive clause because it did "no more than provide a trap for the unwary." *Id.* at 448-49. The court further found the insurer was not

- 15 -

prejudiced by the fact that the suit was brought more than one year after the loss occurred because there never was any dispute regarding the loss, its cause, the existence of coverage for the loss, or the amount of damage. *Id.*

Here, requiring GFTDC to cooperate with St. Paul Guardian and send St. Paul Guardian copies of legal papers received in connection with the HOA Lawsuit is not "a trap for the unwary." St. Paul Guardian is not seeking to enforce a restrictive time limit or to sanction a minimal violation of the cooperation and notice requirements. St. Paul Guardian sent GFTDC five letters over ten months requesting the same specific items of information and documentation and received nothing more than a promise the items would be sent. GFTDC settled the HOA Lawsuit without permitting St. Paul Guardian opportunity to participate in the investigation, settlement, or defense of GFTDC as an additional insured.

GFTDC's breach of the Policies' cooperation and notice requirements caused St. Paul Guardian prejudice and relieves St. Paul Guardian of its obligations to GFTDC under the Policies.

**IV.    Attorneys' Fees**

St. Paul Guardian seeks award of attorneys' fees under A.R.S. § 12-341.01(A). Under the statute, the Court may exercise its discretion to award attorneys' fees to the successful party in any contested action arising out of a contract upon consideration of multiple factors. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). Because St. Paul Guardian has not addressed any of the factors the Court should consider in determining whether to exercise its discretion under the statute and has not presented in any argument in favor of exercising such discretion, the Court will deny St. Paul Guardian's request for attorneys' fees.

**V.    Rule 54(b) Certification**

There is no just reason for delay in the entry of final judgment in favor of Defendant St. Paul Guardian Insurance Company. Granting St. Paul Guardian summary judgment resolves all claims in this action against this Defendant. Further, the issues

- 16 -

decided in this Order are discrete and do not overlap with issues to be decided later in this case. Moreover, an immediate appeal of this Order would not threaten duplication of judicial work through repetitive appeals on related issues or transactions and may contribute to appellate economy by permitting review of this Order in conjunction with review of other Orders issued today in this action on similar issues. For these reasons, pursuant to Fed. R. Civ. P. 54(b), the Court directs entry of final judgment against Plaintiff American Family Mutual Insurance Co. and in favor of Defendant St. Paul Guardian Insurance Company.

IT IS THEREFORE ORDERED that Defendant St. Paul Guardian Insurance Company's Motion for Summary Judgment (Phase One) (doc. #470) is granted.

IT IS FURTHER ORDERED that Defendant St. Paul Guardian Insurance Company's request for attorneys' fees is denied.

IT IS FURTHER ORDERED that the Court expressly determines that there is no just reason for delay in the entry of final judgment in favor of Defendant St. Paul Guardian Insurance Company. The Court directs the Clerk to enter final judgment against Plaintiff American Family Mutual Insurance Co. and in favor of Defendant St. Paul Guardian Insurance Company.

DATED this 2nd day of September, 2009.

_____
Neil V. Wake
United States District Judge