**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Family Mutual Insurance Co., a Wisconsin corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>National Fire & Marine Insurance Co., a foreign corporation; et al.,<br><br>    Defendants. | No. CV-07-2237-PHX-NVW<br><br>**ORDER**<br><br>[Not for Publication] |

Before the Court are Defendant Ohio Casualty's Motion for Summary Judgment (Phase II), Plaintiff American Family Mutual Insurance Company's Motion for Partial Summary Judgment Regarding Ohio Casualty Group Phase Two Issues, National Fire's Phase II Motion for Summary Judgment, Plaintiff American Family Mutual Insurance Company's Motion for Partial Summary Judgment Regarding National Fire & Marine Insurance Phase Two Issues, and National Fire & Marine's Motion to Strike Additional and New Information Submitted After Response Deadline. (Docs. 888, 895, 891, 897, 942.)

**I. Legal Standard for Summary Judgment**

The Court should grant summary judgment if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce evidence and show

there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law. *Id*. at 248. A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*

**II.    Facts Presumed True for Summary Judgment**

George F. Tibsherany Development Company ("GFTDC") served as the general contractor for the project known as Astragal Luxury Villas at Thompson Peak located in Maricopa County, Arizona, under contract with the project developer, Astragal, L.L.C. ("Astragal"). American Family Mutual Insurance Company ("American Family") provided GFTDC with commercial general liability insurance coverage for three policy periods (2000-2003). GFTDC entered into numerous subcontract agreements to perform work at the project, including an agreement with Trussman, Inc., which was insured by Ohio Casualty Insurance Company ("Ohio Casualty"), and agreements with Diversified Drywall, Century Roofing, Faith Plumbing, and RT Brown Mechanical, which were insured by National Fire & Marine Insurance Company ("National Fire"). All of the relevant insurance policies provide commercial general liability coverage for GFTDC as an additional insured.

1 | On October 19, 2004, Astragal Condominium Unit Owners Association filed a lawsuit against Astragal and GFTDC for claims of construction defects. GFTDC filed a Third-Party Complaint against Trussman, Diversified Drywall, Century Roofing, Faith Plumbing, RT Brown Mechanical, and others. American Family provided GFTDC a defense and paid GFTDC's settlement costs.

On November 16, 2007, American Family initiated the present lawsuit, seeking to recover defense costs and indemnification from Ohio Casualty and National Fire under the theory Ohio Casualty and National Fire shared insurance liability for GFTDC with American Family. American Family's Third Amended Complaint seeks (1) indemnification in connection with the Astragal HOA property damage claims, (2) contribution for the cost of the defense, and (3) equitable contribution for breach of duties by failing to participate in the defense of GFTDC.

**III. Ohio Casualty's and National Fire's Additional Insured Policies for GFTDC Are Excess to American Family's Policies, and American Family Has Failed to Prove Any Excess Liability Exists.**

**A. Primary and Excess Liability Insurance Coverage**

A "primary" insurance policy provides coverage where, under the terms of the policy, liability attaches immediately when a covered occurrence happens. *American Family Mutual Ins. Co. v. Continental Cas. Co.*, 200 Ariz. 119, 121, ¶ 10, 23 P.3d 664, 666 (Ct. App. 2001). It provides "first dollar" liability up to the policy limits. *Id.* An "excess" insurance policy provides a second layer of coverage above the primary policy. *Id.* It provides coverage where, under the terms of the policy, liability attaches only after primary coverage has been exhausted. *Id.* Therefore, excess liability insurance coverage is not triggered until primary liability coverage is exhausted. *Regal Homes v. CNA Ins.*, 217 Ariz. 159, 167, ¶ 34, 171 P.3d 610, 618 (Ct. App. 2007). Moreover, "[u]ntil a primary insurer offers its policy limit, the excess insurer does not have a duty to evaluate a settlement offer, to participate in the defense, or to act at all." *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 256, ¶ 18, 63 P.3d 282, 287 (2003).

### B. "Other Insurance" Policy Limitation

"Other insurance" clauses seek to limit or eliminate an insurance policy's coverage in the event the insured has other insurance available. *Regal Homes v. CNA Ins.*, 217 Ariz. 159, 167, ¶ 32, 171 P.3d 610, 618 (Ct. App. 2007). When two policies providing coverage for the same insured each include an "other insurance" clause, both clauses will be given effect if possible. *Id.* at 167, ¶ 33, 171 P.3d at 618. But where the policies, read in their entirety, contain mutually repugnant "other insurance" clauses, the clauses will be disregarded, and the risk will be prorated between the policies. *Id.* at 168, ¶ 40, 171 P.3d at 618; *State Farm Mut. Auto. Ins. Co. v. Bogart*, 149 Ariz. 145, 148, 717 P.2d 449, 452 (1986) ("Arizona follows the general rule of prorating the risk between contradictory 'other insurance' clauses."); *Fremont Indem. Co. v. New England Reinsurance Co.*, 168 Ariz. 476, 477, 815 P.2d 403, 404 (1991).

In *Regal Homes*, no contradiction was found between the "other insurance" language in a CNA additional insured endorsement and the "other insurance" provision in an Auto-Owners policy. 217 Ariz. at 167, ¶ 33, 171 P.3d at 618. The Auto-Owners policy stated:

> **a. Primary Insurance**
>
> This insurance is primary except when **b.** below applies. . . .
>
> **b. Excess Insurance**
>
> This insurance is excess over any of the other insurance, whether primary, excess, contingent on or on any other basis [that is in one of three categories of insurance].

Because the other insurance was not included in any of the three identified categories of insurance, **b.** did not apply. Therefore, the Auto-Owners policy provided primary insurance under **a.**

The CNA policy stated that its coverage was excess over *any* other insurance:

> Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis . . . .

- 4 -

Therefore, the "other insurance" provisions did not conflict because the Auto-Owners policy provided primary insurance and the CNA policy provided excess insurance. Therefore, the "other insurance" provisions in both policies were given effect, and the CNA policy was treated as excess to Auto-Owners.

But the "other insurance" clauses of the CNA policy and a Zurich policy were found to be mutually contradictory where both purported to provide only excess coverage. *Id.* at 168, ¶ 39, 171 P.3d at 619. As previously noted, the CNA "other insurance" provision stated it "shall be excess over any other . . . insurance." The Zurich "other insurance" clause stated:

> This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis: . . . (4) That is available to the insured as an additional insured. . . .

*Id.* Because both the CNA and the Zurich policies purported to provide only excess coverage, they both could not be given effect and thus were disregarded. *Id.* Therefore, CNA and Zurich shared liability on a pro rata basis.

### C. American Family's "Other Insurance" Clause

Here, American Family's "Other Insurance" clause provides:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. . . .

**b. Excess Insurance**

This insurance is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

American Family's "other insurance" clause is similar, but not identical, to the Auto-Owners policy in *Regal Homes*. It provides primary insurance except when the other insurance is primary.

### D. Ohio Casualty's "Other Insurance" Clause

In the policies issued here, Ohio Casualty's blanket additional insured endorsement provides:

> Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary or you request that it apply on a primary basis.

No contract requires that the additional insured coverage of GFTDC be primary, and no one requested that Ohio Casualty provide primary coverage to GFTDC. Ohio Casualty's policies, therefore, provide only excess coverage to GFTDC. Because American Family's "other insurance" clause provides that American Family's coverage will be primary except if the other insurance coverage is primary, and Ohio Casualty's policy states that it is excess, the clauses are not mutually repugnant. The "other insurance" clauses are not contradictory and must be given effect. Therefore, Ohio Casualty's liability is excess over American Family's coverage.

### E. National Fire's "Other Insurance" Clause

All of the National Fire policies contain an "Other Insurance Endorsement," which states:

> This insurance is excess over any other insurance whether the insurance is stated to be primary, pro rata, contributory, excess, contingent, or on any other basis unless the other insurance is issued to the Named Insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declaration of this Coverage Part.

Because the "other insurance," *i.e.*, American Family's, is not "issued to the Named Insured . . . and [] written explicitly to apply in excess . . .," National Fire's "other insurance" clause provides only excess coverage. American Family's coverage is primary unless the other insurance is primary, and National Fire's coverage is not primary. Thus, the "other insurance" clauses are not mutually repugnant and must be given effect. Therefore, National Fire's liability is excess over American Family's coverage.

### F. No Admissible Evidence Shows that American Family Exhausted Its Primary Policy Limits.

Both Ohio Casualty's and National Fire's motions for summary judgment expressly state that American Family did not exhaust its policy limits and, therefore, Ohio

Casualty's and National Fire's excess coverage was not triggered. In its responses and in its briefing on its own motions, American Family did not contend that it had exhausted its policy limits. Its first and only contention of having exhausted its policy limits was made in the Affidavit of Leslie Cuevas ("Cuevas Affidavit") filed May 11, 2010, as Exhibit 2 to American Family's statement of facts opposing Ohio Casualty's statement of facts supporting its motion for summary judgment (Docs. 917, 920), and also filed May 26, 2010, as Exhibit 1 to American Family's supplemental statement of facts opposing National Fire's statement of facts (Doc. 926). Both Ohio Casualty and National Fire ask that the Cuevas Affidavit be stricken from the record.

Both Ohio Casualty and National Fire contend that American Family never disclosed evidence that it had exhausted its primary policy limits for the three policy periods 2000-2003. American Family's position had been, consistently, that Ohio Casualty and National Fire shared co-primary liability with American Family. At oral argument American Family's counsel responded that it did not disclose evidence to support exhaustion earlier because Defendants had not requested it, and they had opportunity to question Cuevas regarding it in his deposition, but did not. However, American Family does not dispute that in September 2008, in response to an interrogatory asking American Family to identify each policy it contends has been exhausted, American Family identified only the policies for the 2000-2001 and 2001-2002 policy periods:

> Interrogatory No. 9:
>
> For each primary insurance policy issued to GFTDC or Astragal that you contend has been exhausted, identify the policy number, the effective dates of the policy and the date of exhaustion.
>
> **Response: American Family policies 02-X18689-01 for the policy periods 10/11/2000 through 10/11/2001 and 10/11/2001 through 10/11/2002 were exhausted.**

Further, in December 2009, in response to American Family's interrogatories, Ohio Casualty stated its position that its coverage was excess to American Family's and its duty to defend and obligation to contribute were not triggered because GFTDC did not exhaust all other valid and collectible insurance available to it. American Family plainly

- 7 -

had notice that whether it had exhausted its policy limits for all three policy periods was a fact that would become material if American Family failed to prove Defendants shared primary liability with American Family.

In response to Ohio Casualty's motion for summary judgment and supporting statement of facts, American Family again asserted only that it had exhausted policy limits for the first two policy periods. Ohio Casualty's motion for summary judgment states, "Because American Family did not exhaust its three years' worth of primary coverage owed to GFTDC for the *Astragal* Litigation, Ohio Casualty's policies were not triggered, and American Family is not entitled to contribution from it. See SOF at ¶ 18." SOF ¶ 18 states: "American Family did not exhaust its limits of liability coverage under its policies issued to GFTDC in its settlement payments made in the *Astragal* Litigation." It cites American Family's discovery response, which states only that limits for two of its policies were exhausted. In response to Ohio Casualty's statement of facts ¶ 18, American Family states:

> 18. Disputed. American Family paid $2,854,630[1] to settle the underlying Astragal HOA litigation (Affidavits [*sic*.] of Leslie Cuevas, attached as Exh. 2). American Family insured GFTDC for three policy periods (2000-2003), and there was a $1,000,000 liability limit for each policy period (Exh. 2). American Family's settlement payments exhausted the limits under the 2000-2001 and 2001-2002 policies (Exh. 2).

The Cuevas Affidavit subsequently filed as Exhibit 2 states:

> 2. American Family paid a total of $2,577,748.14 in settlement of the underlying *Astragal HOA* litigation, as follows: $577,748.14 was paid under claim no. 961-005917 for policy period 10/11/02 - 10/11/03; $1,000,000 was paid under claim no. 221-055893 for policy period 10/11/00 - 10/11/01; and $1,000,000 was paid under claim no. 221-055894 for policy period 10/11/01 - 10/11/02.
>
> 3. American Family insured the George F. Tibsherany Development Corp. for three policy periods (2000-2003). There was a $1,000,000 liability limit per occurrence for each policy period. Each policy provided a general aggregate limit of $2,000,000.

---

[1] American Family subsequently filed a Notice of Errata indicating that "$2,854,630" should have been "$2,577,748.14."

- 8 -

### 4. American Family's settlement payments exhausted the available liability limits under all three policies.

At oral argument, American Family's counsel said that, although the Cuevas Affidavit appeared internally inconsistent, American Family's settlement payments had exhausted the available liability limits under all three policies, and claims had been paid for the policy period 2002-2003 in addition to the "$577,748.14 [] paid under claim no. 961-005917 for policy period 10/11/02 - 10/11/03" identified in paragraph 2 of the Cuevas Affidavit. Counsel did not explain whether the additional claims were related to the underlying *Astragal HOA* litigation, if so, why they were not included in the Cuevas Affidavit, and, if not, how their payment would relate to Defendants' excess liability. Moreover, because this explanation of the Cuevas Affidavit was provided for the first time at oral argument, Defendants had no opportunity to seek related discovery, brief the issue, or prepare oral argument on this issue.

Permitting American Family to rely upon the Cuevas Affidavit and its previously undisclosed assertion of exhaustion would be both unfair and prejudicial to Ohio Casualty and National Fire. Under the federal disclosure rules, American Family was required to timely supplement its previous disclosures when it obtained this new information from Cuevas. Therefore, the Cuevas Affidavit will be stricken pursuant to LRCiv 7.2(m)(2) and Fed. R. Civ. P. 37(c)(1) for failure to timely supplement its response to interrogatories as required by Fed. R. Civ. P. 26(e)(1).

Even if the Cuevas Affidavit were not stricken for untimely disclosure, it would have no weight. On its face, the Cuevas Affidavit's bare conclusion in ¶ 4 contradicts the facts stated in ¶¶ 2 and 3, which indicate that American Family did not exhaust its primary policy limits for policy period 2002-2003. Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Finally, even if it were taken that American Family exhausted its primary policy limits for the 2002-2003 policy period, at most American Family paid no more than its policy limits for that year or any year. As the primary insurer, American Family is obligated to pay up to its policy limits. Thus, even if American Family had exhausted its policy limits to settle the litigation against GFTDC, as summarily stated by Cuevas, it did not pay more than its policy limits. Therefore, there is no *excess* liability incurred by American Family for which it can be reimbursed by the excess insurers Ohio Casualty and National Fire.

Summary judgment is appropriate against a party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Ohio Casualty and National Fire have met their burden of proving their policies provide GFTDC coverage only in excess to that provided by American Family. American Family has not met its burden of proving excess liability remains beyond American Family's policy limits. Therefore, Ohio Casualty's and National Fire's motions for summary judgment will be granted on the ground that their liability is limited to that which exceeds American Family's, and American Family has not demonstrated that it exhausted its policy limits and some excess liability exists.

**IV. Additional Ground for Summary Judgment in Ohio Casualty's Favor: GFTDC's Tender Did Not Include the Information Ohio Casualty Needed to Determine that the Suit Was Potentially Within Its Additional Insured Coverage.**

Ohio Casualty contends that GFTDC's tender of defense did not provide Ohio Casualty with the information it needed to determine whether Ohio Casualty's policy covered GFTDC as an additional insured and whether Ohio Casualty had potential obligations to GFTDC for property damage during its policy period. American Family concedes that GFTDC's counsel did not provide Ohio Casualty a copy of GFTDC's subcontract with Trussman and documents showing completion and close of escrow dates, but contends that Ohio Casualty had a duty to make a reasonable investigation and

could have obtained from other sources the documents it requested. American Family further contends that Ohio Casualty was required to do more than send one letter to GFTDC requesting information to be relieved of its additional insured obligations to GFTDC.

Before an insurer's duty to defend may be found, it must be shown that the insurer received sufficient notice that the insured was tendering the defense to it. *Purvis v. Hartford Accident & Indem. Co.*, 179 Ariz. 254, 257, 877 P.2d 827, 830 (Ct. App. 1994). "What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Id.* (quoting *Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir. 1985)); *see Litton Sys., Inc. v. Shaw's Sales & Serv., Ltd.*, 119 Ariz. 10, 14, 579 P.2d 48, 52 (Ct. App. 1978) (tender of defense "must contain full and fair information").

On October 4, 2005, Ohio Casualty received an additional insured tender of defense letter from Gust Rosenfeld attorney Matthew Bedwell. The letter indicates that Certificates of Liability Insurance were enclosed, but the letter that Ohio Casualty received had no enclosed documents. On October 10, 2005, Ohio Casualty responded with a letter acknowledging receipt of Bedwell's claim served on the insured, Trussman, and requesting, among other things, the contract between Trussman and GFTDC and the homeowners matrix with notice of completion dates and close of escrow dates. On October 14, 2005, Gust Rosenfeld attorney Wendy Weigand sent a letter to Ohio Casualty indicating enclosure of some documents, including the complaint and third-party complaint, but not the contract between Trussman and GFTDC and the homeowners matrix. Weigand's letter stated, "Any remaining information you have requested will be provided to you under separate cover." Neither Gust Rosenfeld nor GFTDC provided the remaining requested information.

None of the October 2005 correspondence mentions GFTDC as an additional insured under Ohio Casualty's policy for Trussman. The Certificates of Liability Insurance do not identify GFTDC as being an additional insured certificate holder under

- 11 -

Ohio Casualty's policies. GFTDC was not specifically endorsed as an additional insured to Ohio Casualty's policies. Without knowing that the contract between GFTDC and Trussman required additional insured coverage for GFTDC under Trussman's insurance policy, Ohio Casualty would not know whether the conditions were satisfied for GFTDC's coverage as an additional insured under Trussman's policy's blanket endorsement.

Further, to determine whether the suit was potentially within the policy's coverage, Ohio Casualty needed to assess whether property damage possibly had occurred during its policy period. The notice of completion dates and close of escrow dates would have enabled Ohio Casualty to make the assessment. Neither the Astragal complaint nor the preliminary list of deficiencies identified any particular subcontractor that was allegedly responsible for the allegations being made by the Astragal HOA or when any of the alleged damage occurred, except to allege that damages were ongoing. The complaint does not mention the word "truss," and it was not until April or May 2007 that the truss claims and alleged responsibility for those claims became more defined through expert opinion. In August 2007, based on the newly developed evidence, Gust Rosenfeld re-tendered to Trussman on the indemnity claim, but not the additional insured claim.

The cases upon which American Family relies do not address circumstances similar to those here. In *Carpenter v. Superior Court*, 101 Ariz. 565, 422 P.2d 129 (1966), the insurer alleged as a defense that the insured violated the policy's cooperation clause where the insured did not know that he was an additional insured under his employer's policy. American Family quotes from *Carpenter* that an insurer has a duty to "exercise reasonable diligence to secure the assistance of the insured," a statement made in the context of requiring the insurer to make reasonable attempts to notify the insured he was an additional insured before blaming him for failing to cooperate. *Carpenter* does not place the burden on Ohio Casualty to investigate whether GFTDC is an additional insured under Trussman's blanket endorsement and whether there is information beyond

the complaint that would indicate property damage had occurred potentially within its policy period.

American Family relies on *Lennar Corp. v. Auto-Owners Insurance Co.*, 214 Ariz. 255, 151 P.3d 538 (Ct. App. 2007), for the proposition that an insurer owes the same duty to defend to an additional insured as it does to a named insured. But the issue here is not whether Ohio Casualty treated GFTDC differently than its named insured Trussman; it is whether GFTDC provided Ohio Casualty information from which it could determine that GFTDC *was* an additional insured—*i.e.*, the subcontract requiring Trussman to obtain additional insured coverage for GFTDC coupled with Trussman's policy's blanket additional insured endorsement conditioned on the contractual requirement. Further, *Lennar* explains that an insurer has a duty to investigate the factual showing made by an insured "once an insured makes some factual showing that the suit is actually one for damages resulting from events that fall under policy terms." *Id.* at 264, ¶ 31, 151 P.3d at 547. It does not require Ohio Casualty to investigate in the absence of some factual showing by GFTDC.

To some extent, American Family suggests that it was not able to provide Ohio Casualty with more information upon which to make its coverage determination because the plaintiffs in the underlying litigation did not more specifically allege damage and fault. However, no Arizona authority shifts the burden of making some factual showing away from the insured merely because the claims have not yet been fully developed. In fact, "[t]he law is clear that an insurer must be given notice of an amended pleading which would impose a duty to defend, and a failure to give notice will relieve the insurer of liability under the policy." *Salvatierra v. Nat'l Indem. Co.*, 133 Ariz. 16, 19, 648 P.2d 131, 134 (Ct. App. 1982). If documents and information that would have triggered any duties of Ohio Casualty became available after the tender, GFTDC could have provided them to Ohio Casualty then.

*Tri-Star Theme Builders, Inc./PCL Constr. Servs., Inc.*, 653 F. Supp. 2d 973, 983 (D. Ariz. 2009), addressed the question of whether the documents provided to the insurer

- 13 -

1 by the additional insured contained enough facts to demonstrate that the damages
2 occurred during the subcontractor's "ongoing operations." The court found that the
3 underlying complaint and documents provided to the insurer did not trigger a duty to
4 defend because the documents were silent concerning the subcontractor and its work and
5 did not connect the damages to the subcontractor's "ongoing operations." The court
6 further stated:

> Moreover, Plaintiff cannot expect to drop hundreds of pages of documents onto the lap of an insurance company–most of which are irrelevant in determining whether coverage is implicated—without pointing to any specific documents or document pages, and expect the insurance company to simply discover on its own whether coverage is implicated; and, even more so, expect and assert that the insurance company is on notice of everything that is contained in the hundreds of pages of documents.

*Id.* at 983. Here, GFTDC did not "drop hundreds of pages of documents" onto Ohio Casualty, but instead suggests Ohio Casualty's attorney representing Trussman could have reviewed documents in her possession related to claims against Trussman or Ohio Casualty could have retrieved the requested documents from the voluminous document depository to determine whether additional insured coverage was owed to GFTDC. But, again, the burden was on GFTDC to provide documentation from which Ohio Casualty could determine whether GFTDC was an additional insured under Trussman's policy and whether the suit was potentially within the policy's coverage.

In an earlier ruling, the Court granted summary judgment in favor of St. Paul Guardian Insurance Co. because "GFTDC did not provide St. Paul Guardian 'full and fair information concerning the pending action and an unequivocal, certain and explicit demand to undertake the defense thereof,' as required for proper tender" and because "GFTDC's breach of the Policies' cooperation and notice requirements caused St. Paul Guardian prejudice and relieves St. Paul Guardian of its obligations to GFTDC under the Policies." St. Paul Guardian received letters from Gust Rosenfeld's Bedwell and Weigand nearly identical to those Ohio Casualty received. As with Ohio Casualty, GFTDC did not provide St. Paul Guardian the documents it requested and settled the underlying lawsuit without permitting St. Paul Guardian opportunity to participate in the

investigation, settlement, or defense of GFTDC as an additional insured. Unlike Ohio Casualty's single request, however, St. Paul Guardian sent five letters requesting additional information over a ten-month period and expressly notified Gust Rosenfeld that if it did not receive the requested documents by a date certain, the claim would be deemed abandoned. By not responding to St. Paul Guardian's letter giving notice the claim would be deemed abandoned, GFTDC's tender no longer, if ever, was "unequivocal." The differences between St. Paul Guardian's circumstances and Ohio Casualty's do not require a different result, though, because in both cases the duty to defend was not triggered where GFTDC failed to provide the insurer with sufficient information to determine whether GFTDC was an additional insured under its policy and whether the suit was potentially within the policy's coverage.

Therefore, Ohio Casualty's motion for summary judgment will be granted on the additional ground that GFTDC failed to provide Ohio Casualty with sufficient information for Ohio Casualty to determine whether GFTDC was an additional insured under Trussman's policy and whether the suit was potentially within the policy's coverage.

Summary judgment will not be granted based on other grounds raised by Defendants' Motions for Summary Judgment and American Family's Motion for Partial Summary Judgment because they involve genuine issues of material fact, have not been decided by the Arizona courts, and/or do not provide sufficient analysis to justify summary judgment.

**V.     National Fire's Motion to Strike**

National Fire moves to strike American Family's Supplemental Statement of Facts (Doc. 926), which includes the Cuevas Affidavit. As explained above, the Cuevas Affidavit will be stricken pursuant to LRCiv 7.2(m)(2) and Fed. R. Civ. P. 37(c)(1) for failure to timely supplement its response to interrogatories as required by Fed. R. Civ. P. 26(e)(1) as referenced and attached to Docs. 917, 920, and 926. American Family's

1  Supplemental Statement of Facts (Doc. 926) will be stricken in its entirety because it
2  merely restates the Cuevas Affidavit.
3      National Fire also moves to strike American Family's Notice of Errata (Doc. 924),
4  filed May 17, 2010, regarding exhibits incorrectly identified in its Statement of Facts in
5  Support of Its Motion for Partial Summary Judgment Against National Fire & Marine
6  Insurance Company (Phase Two) (Doc. 898), filed April 5, 2010.  American Family's
7  failure to timely correct its mistakes caused National Fire unnecessary burden in
8  preparing its response due May 10, 2010.  Moreover, the addition of lengthy "new"
9  exhibits in its Notice of Errata, some or all of which were included in the original
10 statement of facts with different exhibit numbers, has caused further burden and
11 confusion.  Nevertheless, the Notice of Errata will not be stricken because the Court has
12 not relied on any of the related exhibits in deciding the motions for summary judgment
13 and National Fire has not been substantively prejudiced by the untimely filing.
14     IT IS THEREFORE ORDERED that Defendant Ohio Casualty's Motion for
15 Summary Judgment (Phase II) (Doc. 888) and National Fire's Phase II Motion for
16 Summary Judgment (Doc. 891) are granted.
17     IT IS FURTHER ORDERED that Plaintiff American Family Mutual Insurance
18 Company's Motion for Partial Summary Judgment Regarding Ohio Casualty Group
19 Phase Two Issues  (Doc. 895) and Plaintiff American Family Mutual Insurance
20 Company's Motion for Partial Summary Judgment Regarding National Fire & Marine
21 Insurance Phase Two Issues (Doc. 897) are denied.
22     IT IS FURTHER ORDERED granting National Fire & Marine's Motion to Strike
23 Additional and New Information Submitted After Response Deadline (Doc. 942) as to the
24 Affidavit of Leslie Cuevas attached as an exhibit to Docs. 920 and 926.  The Clerk shall
25 strike from the record American Family's Supplemental Statement of Facts (Doc. 926)
26 and American Family's Notice of Filing Exhibit (Doc. 920), including exhibits thereto.
27 The Clerk shall leave the documents imaged in the electronic records of the Court.
28

IT IS FURTHER ORDERED denying National Fire & Marine's Motion to Strike Additional and New Information Submitted After Response Deadline (Doc. 942) as to American Family's Notice of Errata (Doc. 924).

DATED this 22nd day of July, 2010.

Neil V. Wake
United States District Judge